## McMurtrie *versus* Stewart.

1. When a road has once been opened by the supervisors, its location cannot afterwards be altered by another supervisor for the purpose of placing it on what he may suppose to be its proper site.

2. All authority under the order to open is exhausted by the action of those to whom it was directed, and cannot be resumed, although the first location was not according to the report of the viewers.

3. But this rule does not prevent subsequent supervisors from opening or clearing out a road to its proper width.

4. When a track has once been made on which the public can pass, the whole legal breadth of the road is to be taken as devoted to public use; and though the power to make another location is gone, the right and the duty of the supervisors to remove obstructions from any part of it remains in full force.

5. Holden *v.* Cole, 1 *Barr* 303, reaffirmed.

6. A person who procures the commission of a trespass, is liable with those who actually committed it.

ERROR to the Common Pleas of *Huntingdon county*.

This was an action of trespass, *quare clausum fregit*, by Joseph

[McMurtrie v. Stewart.]

Stewart v. McMurtrie, Hamlin, Nightwine, and Wolfkill. The pleas were, Not guilty, *liberum tenementum*, &c.

Joseph Stewart brought the action against the defendants for opening a road through fields in his possession. Stewart having died, the administrators of his estate were substituted. Wolfkill, one of the defendants, at the time of the commission of the alleged trespass, was a supervisor of roads, and in the opening of the road he was assisted by Hamlin, as a hand. A *non pros.* was entered as to Nightwine. As to McMurtrie, it appeared that he was not present at the act complained of, but had threatened to prosecute the supervisors, if the road were not opened.

It appeared that roads had been made by individuals through lands part of which was claimed by the plaintiff; but in order to have a *public* road opened, a petition for the appointment of viewers was presented, and a report in favor of a road was made to January Term, 1836. At April Sessions, 1837, the report was confirmed, and an order made that it be opened. In the spring of 1837, Jacob Dorland was elected a supervisor of the township through which the part of the road in question passed. He testified that an order for opening the road was received by him, and that he opened it where it was, until it was changed by Wolfkill, in 1844 or 1845. The issuing of only *one* order was marked on the record; the entry was without date, but it was in the handwriting of the person who was clerk when Dorland was supervisor, but who was not in office in 1843, when *the copy of the record* given in evidence on the part of the defendants was made out. The Court, however, charged that if the road was opened by Dorland, when he was supervisor, in pursuance of the order of the Court, and had been kept up as a public road, whether he had a copy of the order or not, it was too late for Wolfkill, under the certified copy of 1843, to change it. That the authority to open it had been executed, and the power to act under it was gone. He referred to the case of Holden v. Cole, 1 *Barr* 303.

Stewart claimed the land by two purchases in 1836 and 1837, he claiming up to the road on which the trespass complained of was committed. McMurtrie, in October, 1842, purchased the land on the other side of the road and up to and adjoining Stewart's land, he purchasing from the same person through whom Stewart claimed. In 1844 or 5, McMurtrie required the supervisors to open the road through the field of Stewart according to what was alleged to be the courses and distances stated on the record. The fences of Stewart were thrown down, and the growing crop left exposed to cattle,—Stewart having notified the supervisors not to commit the act. Under the plea of *liberum tenementum*, on the part of McMurtrie, his deed of October, 1842, was given in evidence, calling for certain courses and distances on the line adjoining

[McMurtrie *v.* Stewart.]

Stewart. It was said that a question of boundary was raised through the deeds of Stewart and McMurtrie. The Court charged that if the jury determine that the road existing at the time Mc Murtrie purchased was the road called for *in Stewart's* deed, the road would establish the line between them, and that McMurtrie could not set up a freehold on any part of the land in order to lessen the damages. The material question, however, was as to whether the power to open the road was exhausted by the action of the former supervisor.

A verdict was rendered for the plaintiff for $300.

There were various assignments of error; the material ones being to the charge that if a previous order was issued to the supervisors of the township, and the road opened by him, the subsequent supervisor had no authority to change the route as opened and adopted by the former one, whether the former supervisor at the time had in his hands a copy of the order or not.

Also to the portion of the charge, that if the jury determined the road, at the time *McMurtrie* purchased, to be the one called for in *Stewart's* deeds, it would establish the line between them, and that the defendants could not set up a freehold in McMurtrie in any part of the land trespassed on in order to lessen the amount of damages.

*Benedict*, with whom was *Orbison*, for plaintiff in error.—It was said to be the duty of a supervisor to see that the public roads in his township are opened on the ground on which they were laid out, whether or not he was an officer when they were first ordered to be opened, and whether or not his predecessor had attempted to open the road. Reference was made to 7 *Barr* 275; 1 *Barr* 355, Needles' Road; 8 *Id.* 522, Colden *v.* Chapman; 10 *Ser. & R.* 120. It was alleged that the last supervisor was not a trespasser even if he made a mistake in executing the order placed in his hands, as the Court had jurisdiction over the matter: 3 *Ser. & R.* 141, Allison *v.* Rheam.

*Campbell* and *Fisher*, with whom was *Wilson*, contrà.—In trespass, all who encourage, aid, or assist, are principals.

It would lead to mischievous results if a subsequent supervisor had a right to re-locate a road after it had been once located, even though its location may have varied from the ground originally marked. Sometimes improvements of value have been made near the road as opened, and the alteration may be highly injurious to owners. When years have passed after a location, and the marks on the ground are obliterated, and the road as opened in pursuance of an order of Court has been acquiesced in and treated as the road, as well by the officers of the township as the

public, the authority is exhausted and cannot be resumed : 1 *Barr* 307, Holden *v.* Cole.

The question of the boundary of the lands of Stewart and McMurtrie was left to the jury.

The opinion of the Court was delivered by

BLACK, C. J.—This was trespass for entering the plaintiff's field, taking down his fences and injuring his crop. The defence is that one of the parties sued was supervisor of the township where the alleged injury was done, and went there himself, taking two of the others along as assistants, for the lawful purpose of opening a public road laid out by order of the Court of Quarter Sessions. The plaintiffs in error have furnished us a few meagre extracts from the evidence. But from these, and from the facts stated in the charge, we infer that the road in question was laid out many years ago (how many we cannot tell), and that it was opened at least seven years before the time when the wrong complained of in this suit was committed. From 1837 to 1844, the road was used and kept in repair by the public. But it is now asserted that it was opened on the wrong ground—that the location agreed on by the viewers was through the plaintiff's field, whereas the supervisors of 1844, when they opened it, carried it around the field by way of a private road, which had been previously used. It was under pretence of correcting this error that the defendants entered on the plaintiff's land.

This case is precisely that of Holden *v.* Cole (1 *Barr* 303), which held that supervisors have no right to re-locate a road in order to place it on what they may suppose its recorded site ; that the authority under the order to open, is exhausted by the action of those to whom it is directed, and cannot be resumed ; and that a road once laid can only be altered by a new proceeding under the road law. This doctrine is so consistent with the spirit of the acts of Assembly and accords so well with sound principle and good policy, that it ought never to have been questioned. The only objection that can be made to it is, that it gives to supervisors the power to do wrong without furnishing a remedy. But a little consideration will show that this is not well founded. Where those officers make a faithful effort to be right, they are not likely to commit any serious error ; and surely it is better that a trifling deviation from the line marked by the viewers should be tolerated, than that every succeeding supervisor should have the authority at any time afterwards to alter it according to his own notions, or the interested statements of other parties. If the location of the road is not finally settled by the action of those to whom the order to open is directed, it can never afterwards be settled by the action

[McMurtrie *v.* Stewart.]

of others. If it can be moved once, it may be moved twenty times upon the same principle. If the true site cannot be found when the location is fresh, the probability of success is diminished when the marks are obliterated and the memory of witnesses has faded. Besides; one who is really aggrieved by the opening of a road on ground not intended by the viewers, may have it altered by a petition to the Court and the appointment of new viewers, and this is certainly a more desirable remedy than an appeal to the arbitrary power of some future supervisor. It is said a supervisor may wilfully and maliciously open a road where it was never meant to be. All power is liable to be abused. Still we must trust it somewhere. There are as many checks upon the abuse of this power as any other. A supervisor performs his duty under oath, and acts constantly in peril of an indictment if he commits a flagrant wrong in his office. But the amount of authority which may be abused, is very much diminished by the rule which says, that a road shall be opened but once. If we did not hold that all authority under the order is exhausted by the first execution of it, the power would be perpetual, and as liable to abuse after twenty years as at first.

We are compelled to hold that the defendants were not justified by the old order to open the road. A supervisor, under such circumstances, has no more authority than a private individual to go upon the lands of his neighbor. When a road has been opened and in use without complaint for seven years, it is too late to inquire whether it is, or is not, on the site designated by the viewers.

To prevent misconception it may be proper to add that when the order to open is executed by the supervisors, the whole width of it is to be taken as devoted to the public use, and though it may not at first be entirely cleared out, that may be done afterwards. Opening a road does not consist merely in removing obstructions. When a track has once been made on which the public can pass, the power to make another location is gone, but the right and the duty of the supervisors to extend it to its legal breadth remains in full force. Anything which closes or obstructs a road that has been once opened is a nuisance, and may be abated either by the proper officer or by any private citizen.

We think there was some evidence to connect all the defendants with the trespass.

The other errors assigned are not important. They are not urged in the printed argument of the plaintiff in error, and could not be sustained if they were.

Judgment affirmed.