## Nagle *versus* Mullison.

Exemplary damages may be given in trespass, whenever there has been oppression, outrage, or vindictiveness on the part of the trespasser. And if there be such evidence, the jury, and not the court, are to determine whether it is a proper case for exemplary damages.

In the absence of proof of aggravation, compensation is the proper measure of damages.

In an action against a constable for levying on and selling the plaintiff's goods, under an execution against a third person, it is no defence, as to the unlawful seizure and detention, that the plaintiff subsequently recovered the goods in replevin against the purchaser at the constable's sale.

ERROR to the Common Pleas of *Lancaster county.*

This was an action on the case by James Mullison, the keeper of a livery stable, against Christopher E. Nagle, a constable, for levying on and selling a horse belonging to the plaintiff, under an execution against Dr. Smith Armor.

The facts of the case are fully stated in the following charge to the jury in the court below, delivered by LONG, P. J.:—

"According to the evidence which has been given in this case, it appears, that about the 5th of July 1856, Doctor Smith Armor hired a horse from the plaintiff, Mullison, who resided in Columbia, to go to Marietta, to attend to his professional calling; when he reached there, he hitched the horse at the Cross Key Tavern, and proceeded to visit his patients; during his absence, the horse was taken possession of by defendant (his ground for doing so, was an execution, which had been issued on a judgment obtained by Samuel Hipple against Smith Armor, before John Auxer, Esq.), and in pursuance of the execution, the horse was not only levied upon, but sold to Mr. Lewis Martin, for the sum of $55. After Martin had made the purchase, a replevin was taken out by Mullison, and the horse delivered by the sheriff to Mullison; and the only question now for your consideration is, what ought to be the damages which you ought to award to the plaintiff? He has obtained his horse, and of course you cannot properly allow him damages on that account. Now what ought to be the measure of damages by which you should ascertain the damages which the plaintiff has sustained in this case? In somewhat analogous cases, it has been held, that when a sheriff or constable acts in good faith and honestly in levying and selling, by mistake, the property of a stranger, nothing more ought to be allowed than compensatory damages; which means interest upon the property taken while in possession of the wrongdoer. But if the acts of the defendant were wanton or oppressive, or a malicious invasion of the rights of the plaintiff then you would be justified in allowing exemplary damages. If Hipple, or Nagle, had reasonable grounds to believe

[Nagle *v.* Mullison.]

that Mullison was the owner of the property which was levied upon, and if, after being satisfied of this fact, the defendant still persisted in holding the property, and selling the same, then this would be a fact, from which an oppressive intention on his part might be inferred. If the constable had no satisfactory evidence of who was the owner of the property, and he found it in the possession of the defendant in the execution, he would not be liable to exemplary damages, if he proceeded to levy upon and sell the property; unless in the mean time he had such evidence or facts brought to his notice, which ought to satisfy a reasonable man that Mullison was the owner of the horse. If he was satisfied before he sold the horse, that the horse belonged to Mullison, this would be an oppressive act, which would justify you in allowing exemplary damages. It will be your province to determine from the testimony, whether the horse was wantonly or maliciously levied upon and sold, or whether he acted in good faith, in the honest and fair discharge of his duty. If so, he ought only to be allowed compensatory damages."

To this charge the defendant excepted. The jury found the following special verdict:—

In the above case, the following facts are found to be disclosed by the evidence: That on the 5th of July 1856, the plaintiff was the owner of a dun horse, which, on that day, was hired to Dr. Smith Armor, and was in his possession; and being so in possession of Armor, was levied upon on an execution issued by Samuel Hipple, on judgment obtained before Squire Auxer, in Marietta, and sold on the 17th of the same month to Lewis Martin. Against Lewis Martin a suit in replevin (August Term 1856, No. 190), was brought, on the day he obtained possession (the 17th of July), and the horse was delivered to Mullison and remained in his possession. In the replevin suit, judgment by default was obtained against Martin, and that judgment remains at present in full force and virtue. That they are ignorant, in point of law, on which side they ought, upon these facts, to find the issue. That, if upon the whole matter, the court shall be of opinion, that the issue is proved for the plaintiff, they find for the plaintiff accordingly and assess the damages at fifty dollars ($50), exemplary damages—but if the court are of an opposite opinion, then they find for defendant.

The court below entered judgment for the plaintiff on the special verdict, the following opinion being delivered by Long, P. J.:—
" According to the facts set forth in the special verdict rendered in this case, it appears, that the plaintiff, being the owner of a horse, hired the same to Doctor Smith Armor; that while in his possession, it was levied upon, and taken possession of by defendant, as constable, by virtue of an execution issued upon a judg-

[Nagle *v.* Mullison.]

ment obtained by Samuel Hipple, before Squire Auxer. The horse was afterwards sold by the constable, and Levi Martin became the purchaser. The plaintiff then issued a writ of replevin out of this court to August Term 1856, No. 190, against the purchaser. Upon this writ, the property was delivered over to the plaintiff, and on the 3d of September 1856, judgment entered against the defendant by default. The question now arises, is the action of replevin and judgment thereon a bar to the plaintiff's recovery in this suit? If that action afforded a remedy to the plaintiff (whether he availed himself of it or not) by which he might have obtained satisfaction for the injury complained of in this suit, then I am of the opinion this action cannot be maintained. But it appears to me, that the subject-matters in dispute in the two actions were not only different, but under no circumstances could the plaintiff have recovered in the replevin case, satisfaction for the cause of action complained of here. The replevin was rather a proceeding *in rem.* It is true, damages may be recovered, but they could only be for a detention of the horse by him, which was for a very short time, and not for the taking, which is the gist of the action. If the horse had been voluntarily surrendered by defendant to the plaintiff, that would not have defeated this action; it would only have gone in mitigation of damages. That the same object accomplished by operation of law, should produce a different result, appears to me inexplicable. Suppose the defendant had taken two or three horses instead of one, and made sale of all to different persons, the plaintiff would have had a right to issue a replevin against each purchaser, and a judgment in one action would scarcely be pretended to be a bar to a recovery in the other suits. It is true, if the plaintiff had brought a suit for trespass or trover against the defendant it would have stood as a bar against any action against his vendee, because the action was capable of embracing the matter which constituted the cause of action against the defendant's vendees. But under no circumstances was this the case with the action of replevin, upon which the defendant relies as a bar; all that could be recovered, was the property, or the value thereof, and damages for the detention, which would not reach the cause of action complained of here. The numerous authorities referred to by the counsel for the defendant, on the argument, in our opinion, do not, in principle, reach the case, nor in our opinion have the exceptions to the damages been sustained. Judgment is therefore directed to be entered for the plaintiff on the special verdict for $50.''

The defendant thereupon removed the cause to this court, and here assigned for error: 1. That the court erred in submitting to the jury, as a question of fact, whether the plaintiff was entitled to recover vindictive or compensatory damages. 2. In deciding

[Nagle v. Mullison.]

that the plaintiff was not concluded by the previous recovery in replevin.

*Slaymaker* and *Baker*, for plaintiff in error.—Whether a plaintiff is entitled to exemplary, or merely compensatory damages, is a question of law for the court, and should not be permitted to depend upon the arbitrary will of a jury: *Sedgwick on Damages*, ch. 21; Rose *v.* Story, 1 *Barr* 197; Amer *v.* Longstreth, 10 *Barr* 148. A sheriff or constable, in whose hands an execution has been placed, having received, or been tendered an indemnity, is in duty bound to proceed: Watmough *v.* Francis, 7 *Barr* 215; Fitler *v.* Fossard, *Id.* 542; Hall *v.* Galbraith, 8 *Watts* 220; Corson *v.* Hunt, 2 *Harris* 512. And if, in so doing, he interferes with rights of property, other than those pertaining to the defendant in execution, he is liable to make compensation for the injury thus inflicted, but not to the payment of exemplary or vindictive damages: Pacific Insurance Company *v.* Conard, 1 *Bald.* 138, 146; Watmough *v.* Francis, 7 *Barr* 216; Rose *v.* Story, 1 *Barr* 197; Forsyth *v.* Palmer, 2 *Harris* 97, 98. This defendant was a constable acting under 'an execution, and had received from the plaintiff therein a bond of indemnity. In the seizure and sale of the property, he was acting within the strict line of his duty, and therefore the court should have instructed the jury, that the damages recoverable from him, were to be estimated upon the principle of compensation alone.

But can the plaintiff recover anything in the present action? The injury to his business, as a livery-stable man, if not falling within the description of speculative damages, (see McCabe *v.* Morehead, 1 *W. & S.* 513, and Farmers' Bank *v.* McKee, 2 *Barr* 318), cannot, in the absence of the proper special averments, be made a ground of recovery: 2 *Greenl. Ev.* § 254; Agnew *v.* Johnson, 10 *Harris* 471. For the mere *taking* of this property out of the possession of Armor, he has no valid claim for damages; because, having parted with the right to the immediate possession of his chattel, the mere taking is, as to him, no injury: Lewis *v.* Carsaw, 3 *Harris* 34; Hall *v.* Picard, 3 *Campb.* 187; 5 *Esp. R.* 35.

The sole injury, then, for which the plaintiff could *ever* have obtained redress in this action, was the detention of his chattel beyond the termination of the period for which it had been let to Armor. But this detention is the very cause of action set forth in the declaration filed in the replevin against defendant's vendee, in which he has long since obtained both judgment and satisfaction. For the wrong inflicted upon him, the plaintiff has then elected his remedy, and by that election must now abide: Hitchin *v.* Campbell, 2 *Black. Rep.* 831; Marsh *v.* Pier, 4 *Rawle* 273, 285; Fox *v.* Northern Liberties, 3 *W. & S.* 106; Garvin *v.* Daw-

son, 13 *S. & R.* 247; Cist *v.* Zeigler, 16 *S. & R.* 282, 285; Bower *v.* Tallman, 5 *W. & S.* 556. And its conclusiveness is not affected by the fact, that it was productive of less complete or extensive satisfaction than might have resulted from resort to another remedy: Hite *v.* Long, 6 *Rand.* 457; Carvill *v.* Garrigues, 5 *Barr* 153; Simes *v.* Zane, 12 *Harris* 243; Kendall *v.* Stokes, 3 *How.* 87, 100; Farrington *v.* Payne, 15 *Johns.* 432.

*H. M. North*, for the defendant in error.—It is not disputed but that, where litigation originates in a legitimate dispute on the subject of doubtful rights, and there is no evidence of a wanton invasion of the plaintiff's rights, and no circumstances of aggravation, outrage, or oppression, it is the duty of the court to instruct the jury that compensatory damages only can be recovered. But where there is any evidence, no matter how little, of malice, vexation, and oppression, the facts must be submitted to the jury, who alone have power to determine the fact of malice, where there is a spark of evidence to prove it, and the plaintiff may recover exemplary damages: Rose *v.* Story, 1 *Barr* 197; Good *v.* Mylin, 8 *Barr* 51; Amer *v.* Longstreth, 10 *Barr* 148; McDonald *v.* Scaife, 1 *Jones* 381; Campbell *v.* Brown, 7 *Harris* 359; Wilson *v.* Ellis, 4 *Casey* 241. The causes of action in this and the replevin suits are not the same—this is for damages up to July 17th; that was for damages after the 17th. Martin was not liable for any injury to the property before he got it, nor was any such claim declared for against him. The judgment against him is not satisfied, and it cannot bar the recovery of another judgment, both actions being *ex delicto*. The acceptance of the property by legal process will not place the plaintiff in a worse situation than if Martin had voluntarily surrendered it; it merely goes to mitigate the damages: Rank *v.* Rank, 5 *Barr* 211; Brooks *v.* Olmstead, 5 *Harris* 24; Tracey *v.* Good, 3 *Penn. L. J.* 136; Curtis *v.* Ward, 20 *Conn. Rep.* 204; Shaw *v.* Beers, 25 *Ala. Rep.* 449. The replevin was essentially a proceeding against the property, being a mixed writ, partly *in rem* and partly *in personam*, the summons to the defendant being accessory and subordinate: Baldwin *v.* Cash, 7 *W. & S.* 426.

The opinion of the court was delivered by

THOMPSON, J.—The jury in this case returned a special verdict, but entirely defective as to one of the points, the main one, attempted to be raised in the case. The court entered judgment for the plaintiff, as if on a general verdict; and the assignments of error are to the charge of the court, which raises all the points argued here. As no new or different questions are raised by the special verdict, and no objection made to the form of the verdict, we will consider the objections to the charge.

[Nagle *v.* Mullison.]

1. The 1st and 2d assignments may be considered together. The court instructed the jury, that it was their province to determine, from the testimony, whether the trespass, in seizing and selling the horse, was wanton and malicious, or whether the officer acted in good faith, in a fair discharge of his duty, in the execution of his writ: that, in the one aspect of the case, compensatory damages would be the measure of recovery, but, in the latter aspect of it, the jury might give exemplary damages. This was the substance of the direction.

The plaintiff in error contends, that, whether the case, under the circumstances, was one for exemplary damages or not, was a question to be determined by the court, as a matter of law, and not by the jury. I do not understand the counsel to argue, that compensation alone is the measure of damages in trespass for an injury to, or amotion of, private property; and yet the argument tends to this result. While it may be conceded, that there seems to be a want of legal logic in the idea of compensation beyond the injury, by way of punishment for the evil motives of the trespasser, yet the law is well settled that it may be given. There are many things constituting property to an owner, the value of which to any one else would be inappreciable—a picture, a portrait, or the like, the destruction of or injury to which might amount only to a trespass, although wantonly or recklessly done. Shall a trespasser only make compensation, in such a case, for the money value of such property, or to the extent of depreciation? It never has been so held. In every case of oppression, outrage, and vindictiveness on part of the trespasser, the damages may be estimated and given in a punitive shape, rather than merely as compensatory. The cases of Rose *v.* Story, 1 *Barr* 190, Good *v.* Mylin, 8 *Barr* 51, Amer *v.* Longstreth, 10 *Barr* 145, relied on by the plaintiff in error as sustaining his position, do not do so. They were merely corrective of instructions referring the question of exemplary damages to a jury, in the absence of proof of aggravation. In such cases, the rule undoubtedly is, that compensation is the extent of recovery: Forsyth *v.* Palmer, 2 *Harris* 96. In the case of Rose *v.* Story, Mr. Justice ROGERS says, beyond compensation, "upon no principle of law or equity, is the jury permitted to go, unless in cases of gross oppression or aggravation, when the jury may mulct the party in vindictive damages." In Amer *v.* Longstreth, BELL, J., said, the court below were correct in the "statement of the abstract rule," that, "in actions of trespass, the jury are not confined to the actual damage sustained; they may go beyond that, if the case shows a wanton invasion of the plaintiff's rights, or any circumstances of aggravation or outrage. This is for the jury to determine, and, within reasonable bounds, it is a matter peculiarly within their control." There are many authorities to the same effect, but not necessary to be cited

[Nagle *v.* Mullison.]

in support of such a familiar principle. It is the duty of the court to submit the question of the kind of damages that may be given, to the jury, if there be evidence of aggravation or oppresssion; compensation is the rule, in the absence of such circumstances. Exemplary damages may follow in the wake of their existence; but there must be evidence on the point. If there is, it is proper to submit it to the jury for the ascertainment of the circumstances that constitute oppression and aggravation. The facts may or not satisfy a jury that exemplary damages should be given—but they alone can dispose of the evidence, if there be any on the subject. Here, we have not the testimony legally before us, and we must presume that there was evidence on the point of oppression or aggravation, or it would not have been submitted to them by the learned judge. But, looking at it in its informal shape on the paper-books, we would say that there was abundant evidence, if believed by the jury, to authorize them in finding exemplary damages.

2. The action of replevin against the purchaser, and the recovery of the horse, were no bar to an action against the constable for the original taking. The purchaser at the sale was answerable for no damages before that, and only for such as accrued by reason of his detainer afterwards. But the plaintiff had been deprived of the use and possession of the horse, by reason of the seizure and detention, some time before the sale. This was an injury to the owner, not to be covered by his success in the replevin suit, for it was not the act of the purchaser. It was the act of the constable, the defendant. If his act was wrongful, he is answerable. Otherwise, the use of the animal, or deterioration to it, occurring after seizure and before sale, would go uncompensated. It is not like the case of a joint trespass, and a recovery and satisfaction by one. The recovery in replevin would be, as proof, conclusive against a recovery for the horse, for of that the plaintiff had repossessed himself; but for the damages prior to the sale, it was no bar : 5 *Harris* 24.

We see no error in this record, and the judgment is affirmed.