# THE PHILAD. TRACTION CO. v. C. T. ORBANN.

ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA CO.

Argued January 13, 1888—Decided February 27, 1888.

1. An action for injuries received by a news boy permitted upon the cars of a street passenger railway to engage in selling his papers, is not affected by the provisions of the act of April 4, 1868, P. L. 58, so as to limit his right of recovery to that of an employee.

2. Though the liability of a corporation to exemplary damages for injuries occasioned by the wanton or wilful acts of its servants is clearly established, yet, where there is no evidence which would justify a finding that the wrongful act of the servant was the result of feelings of violence, outrage or reckless indifference, the question of exemplary damages should not be submitted.

3. Lake Shore & M. R. Co. v. Rosenzweig, 113 Pa. 535, distinguished.

Before PAXSON, STERRETT, GREEN, CLARK AND WILLIAMS, JJ.; GORDON, C. J., and TRUNKEY, J., absent.

No. 85 July Term 1887, Sup. Ct.; court below, No. 384 June Term 1886, C. P. No. 3.

On August 5, 1886, Charles T. Orbann, by his next friend Harry McKnight, brought an action against The Philadelphia Traction Company, to recover damages for personal injuries.

At the trial on January 26, 1887, it was made to appear that in May, 1886, the plaintiff, a newsboy about twelve years of age, had been in the front car of the defendant company, near Market and Third streets, calling his papers, and was about to leave. When on the lower step of the platform, he halted for a moment on account of a passing wagon and was pushed by the conductor, as he alleged, and fell in front of the rear car which passed over his legs. One of his legs was amputated the same day. As to the pushing by the conductor, the plaintiff was corroborated by several witnesses. The conductor denied that he had laid his hands on the boy at all, and there was a corroboration of his testimony. The evidence sufficiently appears in the opinion of this court.

Charge of Court below.

The court, GORDON, J., submitted the facts to the jury and charged, inter alia, as follows:

If you should find that the story as told by this boy and the other witnesses for the plaintiff, is true, then there would be presented the case of a lad, not a passenger, a boy selling newspapers, getting upon a railway car by the permission of the person having it in charge, and while upon it thrown down, pushed under the car, under the wheel, and in that manner run over and one of his legs lost and the other injured. If that is true, it was negligence; it was negligence of the very highest order; it was wilful, wanton, malicious misconduct. It was misconduct which in the criminal court would be sufficient to convict a man of grave crime and make him liable to incarceration as a criminal. Especially would such conduct in a civil court amount to gross and wanton negligence.

This boy, in whatever character you regard him, as a person permissibly upon the car, and therefore not a trespasser, or as a trespasser or an obtruder, had a right to immunity from any such act as that; no person connected with the car as agent of the defendant had a right to subject him to the hazard and danger of being pushed from that car while in motion in the public streets.

If, however, you should find the story of the defendant is correct, that this boy got upon the car and got off the car in the manner described, of his own motion, and was struck in the manner described by the defendant, there would be presented a case in which there would be no negligence that the court is able to see on the part of the defendant. It would be his own act from beginning to end. . . . .

If you should determine that the defendant has been negligent, and that the injuries resulted therefrom, you will then consider the question of damages.

What damages is this plaintiff entitled to recover? The law has been stated, and stated to you with accuracy mainly, as to what is the measure of this plaintiff's damages, if you should find him entitled to recover.

[He is entitled to have compensation for the pain and suffering he has undergone or is undergoing or is likely to undergo by reason of his injuries; he is entitled to recover for whatever may be the value of any diminution of his power as an

earner of wages in the support of himself.   If his capacity for earning has been in any way diminished by this accident, he is entitled to money compensation for the value of that diminution.   He is entitled to be compensated, in other words, for all the substantial injury to his capacity to earn money and for all the injury to his comfort and happiness, and for all the pain and suffering he has undergone as the result of this accident. These are the elements that he is entitled to receive compensation for.

In addition to that, if you should find in this case wanton and wilful misconduct on the part of the agent and servant of this defendant corporation, you would be entitled to give this plaintiff such damages as you should consider in your judgment as punitive, as a punishment for such wilful and wanton misconduct, but only if you should find it to be wilful and wanton.][2]

The jury returned a verdict in favor of the plaintiff for $18,000.   On April 26, 1887, after a rule for a new trial it was ordered that on a remittitur of all claim above $12,000, rule discharged, otherwise rule absolute.   The plaintiff filed a remittitur accordingly, and, judgment being entered, the defendant company took this writ, specifying that the court erred:

1. In not instructing the jury that under the act of April 4, 1868, P. L. 58, if the plaintiff was to be considered as lawfully upon the car, not being a passenger, his right of action and recovery was such only as would have existed if he were an employee, and that, if it were true that he was injured by the negligent act of the conductor, it was the negligence of a fellow servant and the company was not liable.

2. The part of the charge embraced in [ ][2]

*Mr. David W. Sellers* (with him *Mr. Gavin W. Hart*), for the plaintiff in error:

1. Under the act of April 4, 1868, P. L. 58, the pleadings and the evidence, the plaintiff was injured by the act of a co-employee and had a right of action against him only: Richard v. Railroad Co., 89 Pa. 193; Penn. R. Co. v. Price, 96 Pa. 256.   A street passenger railway is included within the act: Hestonville, etc., R. Co. v. Philadelphia, 89 Pa. 210, 219.

2. The criticism to be made in the second assignment is,

(1) that the charge did not recognize the right of the parent to the earnings of the minor during his minority. A suit by the father is pending at No. 383 June Term 1886. (2) The charge made it proper in one view to inflict punitive damages, and it is denied that any well-considered case can be found in which innocent shareholders are to be punished for an unauthorized and unsatisfied "wanton and wilful" act of an agent. No action for a malicious prosecution will lie against a corporation : Lord Bramwell in Abrath v. Railroad Co., L. R. 11 App., c. 250. In Quigley v. Railroad Co., 21 How. 208, in which the corporation was held liable in a civil suit for libel, the alleged libelous matter was printed by the board of directors and submitted to the shareholders. And it is not thought that Lake Shore & M. R. Co. v. Rosenzweig, 113 Pa. 535, lays down the rule that a corporation is punitively liable for an officer who commits an assault and battery with intent to kill, unless upon affirmative proof that the corporation had some direct relation to the crime.

*Mr. A. S. L. Shields*, for the defendant in error:

1. The first specification of error is not based upon an exception appearing of record. No pretence is made that the court was requested to instruct the jury as to the applicability of the act of 1868. Moreover, in the cases cited, the defendants were railroad companies, and in none of the cases in which the act referred to was considered, was it ever intimated that it contemplated passenger railways.

2. The nature of the liability of a company for injuries to a child, not a passenger, is well settled in the case of Biddle v. Hestonville, etc., Railway Co., 112 Pa. 551, following Pittsburgh, etc., Railway Co. v. Caldwell, 74 Pa. 421, and Same v. Donahue, 70 Pa. 119.

3. The affirmative of the proposition that a corporation is liable to punitive damages for the acts of its servants done within the scope of their authority, under circumstances which would give such right to the plaintiff as against the servant, were the suit against him, is now settled by Lake Shore & M. R. Co. v. Rosenzweig, 113 Pa. 535. It is submitted that the case cited rules this case.

OPINION, MR. JUSTICE CLARK:

Charles T. Orbann brings this suit against the Philadelphia Traction Company, to recover damages for a personal injury received through the alleged negligence of the company's servants. It is contended on part of the company, in the first place, that Orbann, at the time of the injury, was engaged or employed on or about the road or cars of the company, within the meaning of the act of April 4, 1868, P. L. 58, and, therefore, that his right of action and recovery was only such as he would have if he were an employee of the company; that the conductor must be regarded as a fellow employee, and if the injury arose from the conductor's act, the company is not liable.

We are not inclined to favor that view of the case. Orbann was a newsboy, engaged in selling newspapers; his employment was not on the car, he was only casually there; he sold to all, whether in or out of the car, and was suffered to pass in and out for this purpose at his pleasure. He was not a trespasser, however; the usage of the company at that time, was to permit newsboys upon their cars, without objection; but, whilst he was on the car, he was neither engaged nor employed in the performance of any act or business connected with the road or its works. As well might we say that those who in the regular course of business pass with wagons, etc., up and down the company's tracks, in case of injury from the company's negligence, would be regarded as employees, because they were at the time engaged or employed on or about the company's road. It is certainly absurd to suppose that the act of 1868 was intended to have any such application. The persons who were in contemplation of the legislature in the act of 1868, are those who, although not employees of the company, are nevertheless engaged or employed on or about the company's road or works in the performance of some act or business connected therewith.

In the second place, the company contends that the court erred in the general charge as to the measure of damages, according to which the plaintiff was entitled to recover, if the jury should find in his favor. "He is entitled," says the learned court in the general charge, "to have compensation for the pain and suffering he has undergone, or is undergoing,

or is likely to undergo, by reason of his injuries; he is entitled to recover for whatever may be the value of any diminution of his power as an earner of wages in the support of himself. If his capacity for earning has been in any way diminished by this accident, he is entitled to money compensation for the value of that diminution. He is entitled to be compensated, in other words, for all the substantial injury to his capacity to earn money, and for all the injury to his comfort and happiness, and for all the pain and suffering he has undergone as a result of this accident. These are the elements that he is entitled to receive compensation for. In addition to that, if you should find in this case wanton and wilful misconduct on the part of the agent and servant of this defendant corporation, you would be entitled to give this plaintiff such damages as you should consider in your judgment as punitive, as a punishment for such wilful and wanton misconduct, but only if you should find it to be wilful and wanton."

It is contended that as there was no proof of any previous direction, or of any subsequent ratification of the conductor's act, on the part of the company, the court erred in permitting the jury to impose punitive damages; in other words, that the company cannot be punished for the wanton and wilful act of a mere agent. It seems to be settled by the preponderance of authority in this country, that, in actions against corporations for injuries received through the negligence of their servants, exemplary damages may be recovered when the injuries are wanton and malicious, or are inflicted in a gross or outrageous manner, whether the act was previously authorized or subsequently ratified by the corporation or not.

It is scarcely necessary, we think, to refer in detail to the numerous cases in which this doctrine is asserted. Some of them are collected in Sedgwick on the Measure of Damages, 329, note, and in Sedgwick's Leading Cases on Damages, 746, note; and we may cite the following cases, among many others, sustaining this view of the law: Atlantic, etc., R. Co. v. Dunn, 19 Ohio 162; Chicago, etc., R. Co. v. Bryan, 90 Ill. 126; Hopkins v. Atlantic, etc., R. Co., 36 New Hamp. 9; Philadelphia, etc., R. Co. v. Larkin, 47 Md. 155; Goddard v. Grand Trunk Ry. Co., 57 Maine 202; Evans v. Missouri Pac. R. Co., 11 Mo. App. 463; Southern, etc., R. Co. v. Kendrick,

40 Miss. 374; Bowler v. Lane, 3 Metc. (Ky.) 312; Philadelphia, etc., R. Co. v. Quigley, 21 How. (U. S. 202); Milwaukee, etc., R. Co. v. Armes, 1 Otto 493. In New York and some other states, the law would appear to be otherwise. Cleghorn v. N. Y. Central, etc., R. Co., 56 N. R. 44. In Massachusetts, damages would seem to be given in such cases, on the ground that wantonness in the wrongful act is an aggravation of the injury; they are said to be given not as a punishment, however, but as a compensation for the added insult and increased mental distress, which arises where the injury is inflicted through malice, etc.

In Pennsylvania, since the case of the Lake Shore R. Co. v. Rosenzweig, 113 Pa. 535, the rule would seem to have been settled in accordance with the preponderance of the cases. In that case, Rosenzweig entered the cars at Cleveland; he was riding upon what was known as a round trip ticket, and it was alleged that, according to the regulations of the company, this form of ticket was not good on that train. When the conductor entered the car and called "tickets," Rosenzweig handed his ticket to the conductor who handed it back and pulled the bell-cord to stop the train. The conductor told him his ticket was not good, and he had orders to put him off. Rosenzweig insisted that his ticket was good, but offered to pay his fare. The conductor then said: "My orders are to put you off, and off you must go. Come." Rosenzweig said: "For God's sake don't put me off here; carry me to a station." The conductor replied: "My orders are to put you off, and off you must get; I obey orders if I break owners." Rosenzweig was compelled to leave the train; he was a mile or more from the Cleveland depot; was in the dark, in a strange place, in the midst of many railway tracks, with cars and locomotives passing and re-passing; whilst groping his way he received the injury for which he sued the company. Our brother TRUNKEY, in writing the opinion of this court, said: "If there was no wilful misconduct by the conductor, how can it be said that he was not recklessly indifferent to the consequences likely to befall the plaintiff? If the suit were against him there could be little question that the jury would be permitted to give exemplary damages. The liability of railway and other corporations to exemplary damages for

gross negligence is well settled. The general rule in cases for negligence is, that only compensatory damages can be given. Juries are not at liberty to go farther than compensation, unless the injury was done wilfully, or was the result of that reckless indifference to the rights of others, which is equivalent to a violation of them. There must be wilful misconduct, or that entire want of care which would raise a presumption of conscious indifference to consequences : Milwaukee & St. P. Ry. Co. v. Armes, 91 U. S. 489. The corporation is liable for exemplary damages for the act of its servant, done within the scope of his authority, under circumstances which would give such rights to the plaintiff as against the servant, were the suit against him, instead of the corporation." There may be grave doubts expressed as to the propriety of the rule, but if the doctrine of this case is adhered to, the responsibility of a corporation in exemplary damages for the wanton and wilful acts of its servants, is clearly established in Pennsylvania.

But, under the evidence, was this a proper case for punitive damages ? The rule that imposes this measure of damages is a severe one at the best, and if the master must not only compensate the injury but may be held up as a public example in the payment of "smart money," for the wanton and malicious act of another, an act he neither authorized nor approved and of which he may be wholly innocent, merely because of the existing relation of master and servant, the plainest principles of justice require that great caution should be observed in its application. Moreover, the well-known disposition of juries to return excessive verdicts in this class of cases has shown that the doctrine, although designed for the promotion of the public good, is capable of great practical abuse. It is upon this ground, more than any other, perhaps, that the rule has not been universally recognized.

Exemplary damages are allowed only where the act complained of has been committed wilfully and maliciously, or, in the absence of actual malice, where it has been committed under circumstances of violence, oppression, outrage, or wanton recklessness : Nagle v. Mullison, 34 Pa. 48. When there is no evidence which would fairly justify a jury in finding that the wrongful act was of the general character stated, the ques-

tion of exemplary damages should not be submitted to the jury; in the absence of proof of these circumstances of aggravation, compensation merely is the rule: Nagle v. Mullison, supra. To leave the question of punitive damages to the jury when there is no evidence which would warrant a verdict for other than compensatory damages, or even to instruct them that they may find such damages as they may deem proper, is error: Pittsburgh, etc. Ry. Co. v. Taylor, 104 Pa. 306; Rose v. Story, 1 Pa. 190; Amer v. Longstreth, 10 Pa. 145. Therefore in Pittsburgh, etc. R. Co. v. Shisser, 19 Ohio 157, where a passenger had been ejected from a train by mistake, or on misconception of his rights by the conductor, it was held not to be a proper case for exemplary damages, and upon that ground the judgment was reversed. So in Philadelphia, etc. R. Co. v. Quigley, 21 How. 213, an action of libel in which exemplary damages were given, Mr. Justice CAMPBELL said: " Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation." But as nothing of this kind under the evidence could be imputed to the defendant, the judgment was reversed. In Milwaukee, etc. Ry. Co. v. Armes, 1 Otto 489, the bill of exceptions disclosed this state of facts: Mrs. Armes, in October, 1870, was a passenger on defendant's train of cars, which, whilst running at a·speed of fourteen or fifteen miles an hour, collided with an engine on the same track. The jar occasioned by the collision was light, and more of a push than a shock. The fronts of the two engines, however, were demolished, and a new engine removed the train. This was all the testimony offered by either party as to the character of the collision and the cause of it, but there was evidence tending to show that Mrs. Armes was thrown from her seat and sustained the injury of which she complained. After the evidence had been submitted to the jury, the court gave them the following instruction: " If you find that the accident was caused by the gross negligence of the defendant's servants controlling the train, you may give to the plaintiff punitive or exemplary damages." Mr. Justice DAVIS, delivering the opinion of the court, said: " The jury may consider all the facts which relate to the wrongful act of the defendant and its consequences to

the plaintiff; but they are not at liberty to go further, unless it was done wilfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them; in that case the jury are authorized, for the sake of public example, to give such additional damages as the circumstances require. . . . . . To do this, however, there must have been some wilful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences. Nothing of this kind can be imputed to the persons in charge of the train, and the court therefore misdirected the jury."

In the case at bar the facts are few and simple; the plaintiff, who was a boy of thirteen years of age, relates the occurrence thus: " There were two cars coupled together, and it was coming along, and I jumped on the first one. I hallooed out my papers, and it was pretty near Third street. There was a wagon coming along. I did not want to jump off for fear the wagon might run over me; I stood on the bottom step. People wanted to get on; the conductor shoved me on the arm, and turned me around, and I fell between the two cars. I fell on the ground, on my side, I think; near the track, between the track and the crossing, I guess. I fell between the two of them (the wheels); I was standing like this, on the bottom step, and he pushed me in this way (indicating) and I turned right around, and fell between the two cars. It was the hind car that ran over me." Mr. Katharine, in corroboration, says he saw the conductor raise his arm, as if to push the boy off, but whether he touched him or not, he could not say. Mr. Haley says, there was a wagon passing and the conductor put his arm out and pushed him; that the boy held on to the rail, then dropped his grip, and fell under the wheels. On the contrary, the conductor testifies that he did not push the boy off, nor intend to do so; that he did not touch him at all, and in this he is supported by several witnesses. The jury has found, however, that he did push him off; that in consequence thereof the injury occurred, and our further consideration of the case must proceed upon the assumption of the fact thus found.

But was the act accompanied by circumstances which would characterize the conductor's conduct as wilful and wanton,

reckless or oppressive? Jones was the conductor of the car; his duty was to clear the way for the exit and entry of the passengers without unreasonable delay. The plaintiff, whilst privileged to enter and leave the car, was there by the conductor's permission only; he was standing on the lower step of the car, which was approaching the crossing, and there were passengers at the crossing who wished to enter the car. The conductor, without rudeness, and with proper care that the boy should receive no injury, had a right, as soon as the car should stop, to hasten the little boy's exit, in order to facilitate the admission of the passengers. There had been no previous ill-will on part of the conductor towards the boy. There was not an unkind word spoken. All that appears is that the conductor pushed him "on the arm." Whether this push was a gentle or violent one; whether it was given in anger or wantonness, or merely as a suggestion that the lad must make way for the passengers is not shown. There is nothing to show that the conductor intended to push him off, or indeed to do the boy any harm. The mere fact that he pushed him on the arm, does not indicate that the act was wanton or malicious. There are no circumstances, we think, which would justify a jury in finding that the act was wanton and wilful, or that the conductor was moved by any feelings of violence, outrage, or reckless indifference to consequences. For all that appears we might well suppose that the conductor, in the effort to dispatch his duty, was wholly unconscious of the fact that he had pushed the boy on the arm. There can be no justification, of course, for the negligent act of pushing a little boy off a moving car, and for the consequences of such an act the offending party will ordinarily be held to compensate the injury. But whether he will also be punished for the act, must depend upon the manner or the motive in which the act is done.

In the re-trial of this case, care must be taken also that the plaintiff shall not be allowed to recover for any matter or thing to which his father may be entitled, in any action pending or to be brought, for damages resulting to him from the same injury.

> The judgment is reversed, and a venire facias de novo is awarded.

Statement of Facts.

MR. JUSTICE STERRETT, being of opinion that the instruction as to exemplary damages was fully warranted by the evidence, dissents.