Adelman et ux. *v.* Rosenbaum, Appellant.

Argued October 3, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Abraham Wernick,* of *Evans & Wernick,* for appellant.

*Solomon Freedman,* with him *Henry W. Balka,* for appellees.

OPINION BY BALDRIGE, J., December 16, 1938:

This appeal is from a judgment in the sum of $500

recovered by plaintiffs, husband and wife, in an action against Oscar Rosenbaum, a Philadelphia attorney, for an alleged malicious abuse of legal process in ordering a deputy sheriff to levy upon the household goods of plaintiffs when he knew or should have known that they were not the execution defendants named in the writ.

The defendant represented a client who held a judgment against Samuel and Ida Adelman. On July 10, 1933, he directed the issuance of a writ of fi. fa., which was followed by a levy made on goods in a house at 2963 McKinley Street, Philadelphia. Before the day of the sale, the defendants in the writ wrongfully removed most of their household furnishings from under the levy.

Ida Trachtman, the execution plaintiff and defendant's client, thereafter told the defendant that Samuel and Ida Adelman were living at 854 Granite Street, Philadelphia. The information proved incorrect as that was the address of the present plaintiffs and not that of the defendants in the writ.

On April 25, 1934, defendant wrote a letter on the stationery of Isaac Gold, a real estate agent and his friend, addressed to Samuel and Ida Adelman at 854 Granite Street, urging them to pay the judgment held against them by Ida Trachtman. Upon receipt of this letter, George Adelman called Gold's office and stated he was not the person for whom the letter was intended. Two days later defendant issued an alias fi. fa., directing the sheriff to levy upon the property of Samuel and Ida Adelman at 854 Granite Street.

When Deputy Sheriff Seeds, who had made the previous levy at McKinley Street, visited the premises to carry out his instructions, he realized the plaintiffs were not the judgment debtors, and so notified Rosenbaum's office. The plaintiff-husband, on learning from Seeds that the defendant was the attorney directing the execution, called by telephone the latter's office. The call was answered by a girl but the court sustained an

objection to what was said.  The next day, the defend-
ant wrote Seeds a letter, stating that he had no right
to judge whom the people were, and demanded that a
levy be made, otherwise he would take action against
Seeds.

On April 30, 1934, Seeds carried out those directions.
The next day plaintiffs received a letter from Rosen-
baum, asking payment of the judgment, and stating, in
part: "It will get you nowhere by telling the sheriff
that the name is George Adelman and not Samuel Adel-
man."  Plaintiffs thereupon consulted Henry W. Balka,
an attorney, who after checking their signatures with
those of the defendants in the judgment, called Rosen-
baum on the telephone and explained at length the situ-
ation, stating that George Adelman would be glad to
submit his signature for comparison.  The defendant
declined to consider that suggestion and refused to talk
further to Balka, concluding the conversation by call-
ing Balka and his clients liars, emphasizing that char-
acterization by an oath.  Balka, at least on one further
occasion, attempted to convince Rosenbaum that he was
pursuing the wrong people, but met with no success.
No bills were posted nor was any sale held, and on May
23, 1934, the levy was abandoned.

The appellant complains of the court's refusal to
grant either judgment for defendant n. o. v. or a new
trial.  His first position is that the court erred in per-
mitting the jury to award punitive damages when no
actual damages were proven and he, as an attorney,
was following the instruction of his client.  The learned
court below in its charge to the jury said: "If you
decide to find in favor of the plaintiff, there are certain
elements of damages.  In the ordinary case such
damages would compensate these plaintiffs for any
losses they may have, but they have not proved any, so
you can't find any ...... You can take into account
Mrs. Adelman's nervousness and upset condition, if
you decide to give them anything at all.  I don't think

that is the most important element, but that is for you. The really important thing now is the punitive damages and that means damages that are given by way of punishment to set an example, to prevent that person or other persons in similar circumstances from doing this thing again, this malicious thing."

We think that portion of the charge relating to compensatory damages was more favorable to the defendant than he was entitled to under the evidence offered. Passing on, however, to the exemplary damages, if there was sufficient proof of malice, the jury was justified in finding punitive damages. They will be allowed for torts that are committed wilfully, maliciously, or so carelessly as to indicate wanton disregard of the rights of the injured party: *Thompson et al. v. Swank*, 317 Pa. 158, 159, 176 A. 211. See, also, *Nagle v. Mullison*, 34 Pa. 48; *Whelan v. Miller*, 49 Pa. Superior Ct. 91; *Tyler v. Phila. Ritz-Carlton Co.* 75 Pa. Superior Ct. 353; *Fahrer v. Blumenthal et al.*, 125 Pa. Superior Ct. 568, 190 A. 206.

We think it fairly may be assumed that a small portion of the $500 verdict in this case represented actual damages. The jury probably did not intend to disregard the fact that plaintiffs had to employ a lawyer, the time spent in trying to get the matter adjusted, etc. In any event, there was no violation of the rule that punitive damages may not be wholly disproportionate to the actual damages. Cf. *Thompson et al. v. Swank*, supra; *Mitchell v. Randal*, 288 Pa. 518, 520, 137 A. 171; *Rider v. York Haven W. & P. Co.*, 251 Pa. 18, 26, 27, 95 A. 803. The facts in each of those cases were very unlike those at bar.

We are unable to concur with the appellant's view that there was not sufficient evidence to enable the jury to find malice on the part of the defendant to support an award for punitive damages. Legal malice in cases of the character we are considering has been variously defined as "oppression," "outrage," "vindictiveness," "a wanton

disregard of the rights of others." In *Nagle v. Mullison*, supra (34 Pa. 48, 53) where a verdict for exemplary damages only was upheld, the court said: "In every case of oppression, outrage and vindictiveness on part of the trespasser, the damages may be estimated and given in a punitive shape, rather than merely as compensatory." See, also, *Thompson et al. v. Swank*, supra; *Fahrer v. Blumenthal et al.*, supra.

It was the defendant's reckless insistence after the plaintiffs had resorted to every way they knew to correct defendant's wrong impression that brought upon him a penalty, which, with a little reasonable consideration and investigation, could have been readily avoided. His flagrant disregard of the several repeated warnings made to him, not to his client, is a sufficient basis upon which to rest the finding by the jury that he acted maliciously. It is not necessary, as appellant's counsel vigorously argues in this case, that the malice or oppression be directed against the plaintiffs personally; it is sufficient if the circumstances are such that an inference of malice arises: *McBride v. McLaughlin*, 5 Watts 375.

The defendant cannot invoke the plea of privilege as an attorney acting for a client. The plaintiffs' evidence, accepted by the jury, disclosed malice, and malicious action is not sheltered by any privilege. An attorney is personally liable to a third party when he is guilty of fraud, collusion, or a malicious or tortious act, and he is liable, as anyone else, when he encourages and induces another to commit a trespass. This rule is stated in I Am. Jur. p. 189, §31, as follows: "An attorney may be held liable for an abuse of process, where the acts complained of are his own personal acts, or the acts of others wholly instigated and carried on by him." See, also, 6 C. J. p. 625; 7 C. J. Sec. p. 834, §52; *Welsh v. Cooper*, 8 Pa. 217; *McMurtrie v. Stewart*, 21 Pa. 322; *Morrison v. Nipple*, 39 Pa. Superior Ct. 184; *Shane v. Gulf Refining Co.*, 114 Pa. Superior Ct. 87, 173 A. 738,

When the levy was made upon the goods of the plaintiffs, they lost dominion over their property and a trespass was committed, notwithstanding there was no sale or removal of the goods and the levy was later abandoned: *Paxton v. Steckel,* 2 Pa. 93; *Welsh v. Bell,* 32 Pa. 12; *Shane v. Gulf Refining Co.,* supra.

The appellant complains further of certain alleged errors in the charge of the trial judge. The only specific exception was to "that part of your Honor's charge where you state the sheriff must act as he is told to do." The court's statement was: "The sheriff had to do what he was told." We do not regard that as legally incorrect, but, in any event, it was not material to the action involving only the defendant, and it did him no harm.

Under the general exception, we are confined to the consideration of basic or fundamental errors: *Zimmerman v. Houghwot,* 125 Pa. Superior Ct. 319, 189 A. 519; *Slocock et al. v. Liggit,* 326 Pa. 492, 192 A. 671.

The judge's definition of malice and his instructions, taken as a whole, were not erroneous, although his characterization of malice by the slang expression "being again the government" was not apt, and, in our judgment, could have well been omitted.

A reading of this charge discloses that the judge adequately and fairly presented to the jury all the legal issues involved. The verdict seems rather high but it is not so excessive as to warrant our disturbing it.

Judgment is affirmed.