## CIRCUIT COURT OF WARREN COUNTY

DuBrueler

v.

Hartford Fire Insurance Co. et al.

September 9, 1983

Case No. (Law) 6463

By JUDGE HENRY H. WHITING

This letter reflects my ruling on the demurrer filed by Sands, Anderson, Marks & Miller, a professional corporation, and Frank B. Miller, III.

The motion for judgment seeks to hold the law firm and an individual partner in the law firm with their clients, four fire insurance companies insuring the premises of the plaintiff which had been destroyed, for a number of alleged torts arising out of an alleged failure of the companies to settle the claim promptly. The counts affecting the law firm and the lawyer are set forth from II through IV. Count I makes no claim against the law firm or lawyer, and the plaintiff has admitted its insufficiency in that regard. Count II, charging the "tort of bad faith," alleges that the law firm and lawyer "acted together and in concert to assist and aid said defendant insurance company in its improper refusal to pay said insurance claim" (paragraph 4). Count III, charging a "Violation of Unfair Settlement Claims Practices Act," never specifically mentions what the law firm or lawyer have done in this violation except what may be incorporated by reference in paragraph 1, which incorporated the above-quoted charge in Count II, paragraph 4. Count IV, alleging a violation of a Virginia conspiracy statute in paragraph 4, charges that the law firm and lawyer "did combine, associate, agree, mutually undertake or concert togeth-

er, or did attempt to procure the participation, cooperation, agreement or other assistance of each other. . . for the purpose of willfully and maliciously injuring the plaintiff in his reputation and business. . . or compelling plaintiff to perform acts against his will."

In the Court's opinion, these allegations are insufficient to charge either the law firm or the lawyer with liability.

Assuming, but not deciding that Counts I through IV state causes of action against the insurance companies and/or the adjusting firm and its adjuster, the Court believes additional specific factual allegations are necessary to hold the law firm or the lawyer in this case.

Plaintiffs have cited a number of cases in which lawyers have been held personally liable in their prior representation of clients whose interests were adverse to the plaintiff. However, a careful reading of those cases indicates specific activities of the lawyer which went far beyond those described in these pleadings. In the most frequent kind of case the lawyer had knowingly committed a fraudulent or dishonest act in the advancement of his client's position. *U.S.* v. *Benjamin,* 328 F.2d 852 (2d Cir. 1964) (false opinion letter in a securities registration); *Steinberg* v. *Guild,* 254 N.Y.2d 7 (Sup. Ct. 1964) (pre-dating a contract to conceal a fraudulent arrangement); *Newberger Loeb & Co., Inc.* v. *Gross,* 563 F.2d 1057 (2d Cir. 1977) (knowingly counseling and instituting baseless and fraudulent law suits and issuing a false opinion letter.[1] In one case the lawyer who induced and encouraged the client to commit a trespass on the opposing party was held liable to that party. *Adelman* v. *Rosenbaum,* 133 Pa. Super. 386, 3 A.2d 15 (1938).

The following cases cited by the defendant seem closer to this fact situation. In *Worldwide Marine Trading Corp.* v. *Marine Transport Service, Inc., et al.,* 527

---

[1] SEC v. National Student Marketing Corp., 457 F. Supp. 682 (D.C. 1978) is cited by the plaintiffs as a case of a lawyer's liability for "failure to override their clients' improper business decisions in a merger case." However, that case deals with the lawyer's liability to the stockholders of the corporation he represented. Cf. Judge Parker's statement on the lower left-hand corner of page 713 and the cases cited on that page showed a duty to disclose created under the securities law, which is not involved in this case.

F. Supp. 581 (E.D. Pa. 1981), a debtor sued his creditor, the creditor's law firm and the individual lawyer acting for the firm alleging that the lawyer had "masterminded" a scheme to injure the debtor by the lawyer's "personally" holding checks payable to the debtor, thereby: (1) tortiously interfering with the debtor's contractual relations with third parties; (2) committing antitrust violations; and (3) engaging in a malicious prosecution. The Court dismissed the law firm and the lawyer as a matter of law since there was no showing of a "self-interest activity on the part of [the lawyer] that went beyond the scope of his practice of law," *id.*, at 583, or that he had collected anything other than a fee for his services or had any "stake" in his client's activities greater than a professional interest. That Court cited and distinguished many of the same cases already discussed in this opinion on the ground and concluded:

> There is an important societal interest in protecting the lawyer from third-party lawsuits, and thus in requiring a showing of a knowingly fraudulent or tortious action by the lawyer before permitting third-party recovery from the lawyer. (citation omitted). . . A lawyer must be able to act decisively on behalf of his client, without fearing that he will provide "the deep pocket" in subsequent litigation. If his advice and activity are wrong or negligent, he is already exposed by virtue of his duty to his client. 527 F. Supp. at 586.

Paraphrasing *Worldwide Marine Trading*, it would seem that the plaintiffs must show to establish Mr. Miller's participation in a conspiracy to violate the alleged tort of "bad faith" or the Unfair Settlement Claims Practices Act that:

(1) He knew unequivocally that his client's actions were in violation of that tort or Act; and

(2) He "actively participated in a way that went beyond his role as an adviser," *id.*, at 585.

Two other cases, one from California and the other from Minnesota, are instructive. In *Parnell* v. *Smart*, 66 Cal. App. 3d 833 (CA 3d Dist. 1977) (claimant under an uninsured motorist's endorsement sought to hold the insurance company's lawyer liable to him for a failure

138

to communicate his prior offers of settlement to the insurance company).[2] Recovery was denied because the relation was correctly perceived as adversary, creating no duty to the plaintiff. As the Court said:

> The defendants occupy the position of counselor to the adverse party (Farmers) in an adverse proceeding instituted by the plaintiff. Defendants were directly responsible to their client, Farmers, and were under a duty to represent and protect their client's interest against the claim being made by plaintiff. In this role they were duty bound to challenge, minimize, or, if possible, to defeat the claim being made. Under these circumstances, it is unreasonable to conceive that defendants owed some sort of legal duty to plaintiff. Further, under the facts of this case, there was clearly no intent on the part of Farmers in retaining defendants to defend against the claim to confer any benefit upon plaintiff. *Id.*, at 836.

The Minnesota case was an action against a vendor's attorney by a disappointed vendee contending that the attorney had tortiously interfered with a sales contract; the Court dismissed the claim as a matter of law:

> The more determinative principle for this case is, as the trial court concluded, that an attorney acting within the scope of his employment as attorney is immune from liability to third persons for actions arising out of that professional relationship. This immunity, to be sure, may not be invoked if the attorney, exceeding the bounds of this unique agency relationship, either is dominated by his own personal interest or knowingly participates with his client in the perpetration of a fraudulent or unlawful act. [Citing cases.] We agree with the trial court's conclusion that there is no genuine issue of fact as to the application of defen-

[2] The first four counts in that case asserted the tort of "bad faith" against the insurance company based on its failure to arbitrate.

dant's general immunity. *McDonald* v. *Stewart*, 182 N.W.2d 437 (Minn. 1970).

Virginia has not expressly passed on this particular point. However, in a case dealing with a medical malpractice claimant's attorney's potential liability to the doctor, who later sued the attorney for negligence in advising the medical malpractice claimant, denied any recovery as a matter of law on a number of grounds, one of which was:

> Absent special circumstances, it generally is held an attorney can be liable for consequences of professional negligence only to a client. . . . The courts reason that if liability would be permitted to a third party without regard to privity, the parties to the contract would be deprived of control of their own agreement. Further, the duty to the general public resulting from abandonment of the privity requirement would place a potentially unlimited burden on lawyers. [Citing an Iowa case.]
>
> In other states inroads have been made in the privity doctrine as it pertains to legal malpractice, but where these inroads have occurred, the third party has been a direct and intended beneficiary of the lawyer's services. An adverse party does not stand in this position. *Ayyildiz* v. *Kidd*, 220 Va. 1080-1086 (1980).

*Kidd* reflects the sound policy fostering an essential part of any successful system of justice, the requirement of a duty of the undivided loyalty of a lawyer to his client. If the courts impose duties of care to other parties than the client, the unique trust clients must place in the lawyer's advice is necessarily eroded. While the pleadings in this case might allege more than the negligence alleged in *Kidd*, they fall short of showing conduct transcending a lawyer-client relationship. The Court believes that a duty by a lawyer to the adversary party can only be raised by pleading *and* proving a specific action counseled or taken by the lawyer and *known* by him at the time to be clearly illegal or tortious.

The plaintiff also contends that Virginia Code Section 8.01-223 abolishes the privity doctrine and authorizes this action against this attorney. This contention cannot succeed. The Virginia Court's reluctance to expand the privity doctrine by judicial decision is noted in *General Bronze Corporation* v. *Kostopulos*, 203 Va. 66 (1961). After that case was decided, the legislature enacted Virginia Code § 8.01-223 in 1966 to eliminate the necessity of privity in actions "resulting from negligence." The plain intent of the legislature was noted in *Gravely* v. *Providence Partnership*, 549 F.2d 958 (4th Cir. 1977), in denying a claim for breach of contract brought by a hotel guest against an architect alleging both a breach of contract and a negligent design of the hotel stairway causing his injury. The Court did permit the case to go to the jury on the negligence theory because of that statute.

If the Court is correct in its ruling regarding the individual lawyer, obviously the law firm would also be dismissed. However, if the Court is in error it should go further and rule as to the law firm's potential liability. Suffice it to say there is no allegation sufficient to charge the law firm as the principal of the lawyer even if the allegations were sufficient to show that the lawyer had knowingly participated in a fraudulent or tortious act.

For the reasons assigned, the demurrer is therefore sustained.

If the plaintiff desires to amend, any such amendment shall be filed promptly and in accordance with the order attached sustaining the demurrer.