# Ewing v. Musser, Appellant.

*Contract—Sale—Passing of title—Payment—Trover—Conversion.*

1. Where a sale of chattels is made without any expressed agreement as to the time of payment the presumption is that the parties dealt on a cash basis and no title passes to the vendee until the price has been paid, unless there has been an actual delivery without payment. And even where there has been a delivery, if such delivery is made with the belief that payment is to be made at once and the vendee fails to pay, the vendor may reclaim his property if he take immediate steps so to do.

2. Where cattle are sent to a distant point on a telegraphic order, directing the seller to draw on the buyer for the price, and nothing further is said about payment, and when the cattle arrive at their destination they are sold at the stock yards by the agent of the purchaser in the latter's absence, and without his knowledge or the knowledge of the seller, and in accordance with an alleged custom of the yard of which the seller had no notice, the agent cannot retain the purchase money of the cattle, if it appears that the seller promptly drew upon the agent for the money, and that the draft was dishonored. In such a case the act of the agent constituted a conversion of the cattle for which he would be liable to the seller in an action of trespass.

Argued Nov. 11, 1909. Appeal, No. 187, Oct. T., 1909, by defendant, from judgment of C. P. Lancaster Co., Aug. T., 1908, No. 89, on verdict for plaintiff in case of James T. Ewing, doing business under the firm name of James T. Ewing & Company, v. F. C. Musser. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass for conversion. Before HASSLER, J.

From the record it appeared that on June 1, 1908, the plaintiff received a telegram, at his home or place of business, in

Kansas City, Mo., from H. K. Alwine, of which the following is a copy: "Ship me Tuesday two loads heifers Lancaster care Musser average eight fifty draw Middletown," to which the plaintiff replied by telegram, "Message received market higher your kind cost about four seventy-five answer." On June 3, 1908, he received the answer, "Fill order to-morrow on market." The Musser referred to in the first telegram is F. C. Musser, the defendant. The words "Draw Middletown" used in the first telegram mean, draw on H. K. Alwine at Middletown, Pa., for the price of the cattle. In pursuance of these telegrams the plaintiff, on June 4, 1908, shipped a car load of heifers as directed, receiving from the railroad company a receipt and bill of lading. He attached the bill of lading to a draft upon Alwine at Middletown for the price of the heifers, and deposited it in a bank at Kansas City, Mo., for collection. The heifers reached Lancaster, Pa., on June 7, 1908, and were taken possession of by the defendant, who subsequently sold them for $1,100.11, which amount he now has in his possession. It is the custom of the stock yards at which F. C. Musser did business for the person in whose care cattle are shipped to sell them, as soon as can be done advantageously, after their receipt. The draft was not paid and duly protested, and returned with the bill of lading to the plaintiff. The plaintiff prior to this transaction had shipped other car loads of cattle to H. K. Alwine, care of the defendant, and attached a bill of lading to the draft, sent them in due course of business, and all of such drafts were paid. The plaintiff contended that this was a sale to H. K. Alwine for cash, and that the title of the cattle did not pass until their price was paid.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $1,100.11. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*John E. Malone,* with him *J. Roland Kinzer,* for appellant.— The case of Greaner v. Mullen, 15 Pa. 200, is almost identical

with the present case. Though the terms of a sale be cash, a subsequent delivery, without payment, passes the property to the vendee, not only as against all the rest of mankind but against the vendor himself: Bowen v. Burk, 13 Pa. 146; Harris v. Smith, 3 S. & R. 20; Welsh v. Bell, 32 Pa. 12; Backentoss v. Speicher, 31 Pa. 324.

Appellee never had any interest in any specific money, coin or bank bills, which appellant converted, nor does the statement in this case allege the conversion of any specific money, nor does it attempt to identify the same: Westgate v. Weidman, 8 Del. Co. Rep. 460; Life Assn. of America v. Catlin, 37 Leg. Int. 52.

*W. H. Keller*, of *Coyle & Keller*, with him *M. G. Schaeffer*, for appellee.—The sale was a cash sale: Hand v. Matthews, 208 Pa. 149; Welsh v. Bell, 32 Pa. 12; Frech v. Lewis, 218 Pa. 141.

If one sell goods for cash and the vendee takes them away without payment of the money, the vendor should immediately reclaim them by pursuing the party and retaking them, and this may be done when necessary, even by force: Bowen v. Burk, 13 Pa. 146; Holmes, Lafferty & Co. v. Bank, 87 Pa. 525.

Trespass was the proper action: Trout v. Kennedy, 47 Pa. 387; Alexander & Co. v. Goldstein, 13 Pa. Superior Ct. 523; Stegmaier v. Keystone Coal Co., 225 Pa. 221; Conn v. Hunsberger, 224 Pa. 154.

OPINION BY HENDERSON, J., March 3, 1910:

The appellant contends for two propositions: (1) that there was a delivery of the cattle to the purchaser as a result of which the title passed to him free from lien for the purchase money, and (2) that the sale of the cattle by the defendant at the stock yards in accordance with a local custom converted the property into money and that an action of trespass in the nature of trover cannot be sustained. That the negotiation between Alwine and the plaintiff contemplated a cash payment can hardly be doubted. The telegraphic order for the stock directed the plaintiff to draw on the purchaser for the

price. Nothing was said in the correspondence about any other terms, and former dealings between them in a few sales had been cash transactions. Where a sale of chattels is made without any expressed agreement as to the time of payment the presumption is that the parties dealt on a cash basis and no title passes to the vendee until the price has been paid, unless there has been an actual delivery without payment: Welsh v. Bell, 32 Pa. 12; Hand v. Matthews, 208 Pa. 149; Frech v. Lewis, 218 Pa. 141. And even where there has been a delivery, if such delivery is made with the belief that payment is to be made at once and the vendee fails to pay, the vendor may reclaim his property if he take immediate steps so to do: Woolsey v. Axton, 192 Pa. 526; Frech v. Lewis, 218 Pa. 141. .The presumption arising from the absence of evidence of any arrangement for credit and the testimony showing that the bill of lading was attached by the plaintiff to the draft against Alwine and forwarded for collection close the door against the argument that the plaintiff's contract of sale was not on a cash basis. The consignment was to Alwine in care of the defendant who was a live stock dealer at Lancaster. Before the cattle or the draft arrived Alwine absconded and, so far as appears in the case, never knew whether the cattle arrived or not. The defendant sold the cattle without instructions either from the plaintiff or Alwine, in accordance, as he explained, with a local usage of the yards at Lancaster that all cattle consigned to the care of dealers are sold as soon as can be advantageously done. There is no evidence, however, that the plaintiff knew of any such usage or that Alwine intended this shipment of cattle for sale at the stock yards. On the day of the sale the defendant wrote to the plaintiff: "We had a load of heifers to-day billed from J. T. Ewing, Kansas City, to H.. W. Alwine, care F. C. Musser. We sold them for five sixty-nine per hundred and net amount realized is $1,100.11. Were they your cattle, and if so, let me know, and if you made draft, and we will mail you remittance. F. C. Musser." To this letter the plaintiff answered by telegraph: "Cattle billed Alwine made draft Middletown." The defendant apparently supposed that the plaintiff was the owner of

the cattle and he recognized the plaintiff's title to the money arising from the sale if a draft was drawn. The plaintiff was led by this letter to believe that the defendant would remit to him the money into which he had converted the cattle, but not having received it he drew on the defendant on June 27. We do not find anything in the case to indicate that the plaintiff was remiss in asserting his title as soon as he learned that his draft was protested. His remoteness from the place to which the cattle were consigned necessarily delayed his efforts to recover his property. But we would not be justified in declaring him in default in this respect. If we assume that delivery to Musser was a delivery to Alwine and that Musser could rightfully sell the cattle without instructions or knowledge that Alwine desired to have them sold it became his duty when informed of the situation to pay the money to the plaintiff and his refusal so to do amounted to a conversion. The custom in existence at the stock yards according to which the sale was made could have no effect in changing the title or investing the defendant with any right which Alwine would not have had if he had been present. The action of trover is based on the right of possession of the plaintiff against the defendant. The plaintiff must show property in himself and an unlawful conversion by the defendant. If, then, the plaintiff could have reclaimed his property when he discovered that his draft was protested neither Alwine nor Musser could convert the property and refuse to deliver up the price. Such refusal would relate back to the sale and would make the act a wrongful conversion of the cattle. The case of Alexander & Co. v. Goldstein, 13 Pa. Superior Ct. 523, is an authority supporting the form of action. On both of the questions submitted we think the case is with the plaintiff.

The judgment is, therefore, affirmed.