# Robb, Appellant, *v.* Zern.

*Contract—Sale—Delivery—Payment of price—Title.*

Where a person sells three cows and three calves for $113 and receives $3.00 at the time of the sale, and the purchaser directs the seller to keep the cows until he is notified to deliver them at a place designated, and the understanding is that the balance of the purchase money is to be paid upon the delivery of the cows, the title to the cows does not pass until delivery, and if one of the cows dies in the meantime, the loss is that of the seller and not of the purchaser.

Argued Oct. 28, 1909. Appeal, No. 65, Oct. T., 1909, by plaintiff, from judgment of C. P. Huntingdon Co., Sept. T., 1908, No. 30, for defendant non obstante veredicto in case of M. R. Robb v. D. S. Zern. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Appeal from judgment of justice of the peace. Before WOODS, P. J.

The opinion of the Superior Court states the case.

At the trial by direction of the court, the jury returned a verdict for plaintiff for $32.00. Subsequently the court entered judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned* was in entering judgment for plaintiff n. o. v.

*L. H. Beers,* for appellant.

*H. H. Waite,* for appellee.

OPINION BY BEAVER, J., March 3, 1910:

The action here was originally brought before a justice of the peace for the purchase price of a cow which the plaintiff had agreed to sell to the defendant in connection with two other cows and three calves. The plaintiff's was the only testimony relating to the terms and conditions of the sale. The material facts, as detailed by the plaintiff in his examination and cross-examination, were about as follows: "Q. Did

you sell some cows, and, if so, how many, to the defendant here—D. S. Zern?  A. Yes, sir; three cows. . . . Q. What year?  A. 1908. . . . Q. What was the character of those cows you sold him?  A. Three fresh cows.  Q. Had they calves?  A. All had calves; yes, sir; they all had calves by their sides.  Q. What was the price agreed upon that he was to pay you?  A. For the three cows, $113. . . . Q. Did he pay you anything at that time on this contract?  A. He paid me $3.00.  Q. What arrangement, if any, did you make about keeping the cattle?  A. He had not his car load bought yet and he asked me to keep them until he sent me word, and then send them to Knode's.  He told me to take good care of them before he left, the same as if they were my own cattle. . . . Q. What happened to one of these cows?  A. I could not tell; it died very unexpectedly; nothing seemed to be the matter with the cow until it got sick and died. . . . Q. After that did you deliver the other two cows?  A. Yes, sir, and the three calves.  Q. Do you remember the date of the death of the cow that died; that is, how long before you delivered them?  A. It died on the third of June, if I remember.  I think that is the date.  Q. So it was impossible for you to deliver that cow?  A. Yes, sir.  Q. And you delivered the two living ones and the three calves?  A. Yes, sir.  Q. When you did that, how much additional were you paid, if anything; when you delivered the two cows and the three calves, what were you paid?  A. Seventy-seven dollars.  Q. Seventy-seven dollars additional; then you got how many dollars in all?  A. He wrote me in the letter he would pay me $77.00 that day, but I think——Q. And how much did he pay you before?  A. He said he would pay me $77.00 in the letter, but I think that the check was $78.00, if I remember right." On cross-examination, the plaintiff stated: "Q. Mr. Robb, can you give us the prices fixed by you upon each one of those fresh cows which you said you sold to Mr. Zern?  A. I do not know as I can; I had my price on them, but they were sold as a whole. He states the prices in that letter.  Q. How much?  A. One hundred and thirteen dollars for the three cows.  Q. Was not the price of this cow that died $32.00?  A. No, I think not. . . . Q. You had a fixed price on each one, had you not?  A. Yes, sir.

Q. The sum total of the price fixed by you on the three cows aggregated $113?     A. Yes, sir. . . . Q. Now, Mr. Robb, you were to deliver these three cows, when notified to do so, by Mr. Zern over at Knode's, were you not?     A. I was to take them to Knode's when he notified me.     Q. And at that time he was to pay you the balance of the money on the cows, was he not?     A. I was to receive the balance of the money, yes, sir."

Did the title to the cows and their calves pass at the time of the contract of sale?     What were the terms of sale?     Was there any intention that the terms should be other than cash upon delivery?

The general principles governing the necessity for delivery, as between the parties, are well stated in 18 P. & L. Dig. of Dec. 32,054: "As between vendor and vendee, title to personal property may pass under the contract of sale without actual delivery, and before the time for delivery, if such be the intention of the parties; but, on the other hand, the fact that there has been no delivery may be considered as strong or even conclusive evidence that the sale remained executory and the contract itself may provide for delivery as a condition precedent to the vesting of title."

After the agreement of sale between the plaintiff and the defendant, two things were to be done, in order to make the transaction complete.     One was the delivery at Knode's, the other was the payment of the purchase price.     In Welsh v. Bell, 32 Pa. 12, where there had been, as here, a payment of a portion of the purchase money on account of bark sold by the plaintiff below to one Kestner, which was subsequently levied upon by the sheriff as Kestner's property, and Bell brought suit against the sheriff to recover damages for the property levied upon which was carried away, Mr. Justice Strong in his opinion says: "The property was either wholly in Kestner, or none of it.     The contract having been to sell for cash, payment of the whole price was a necessary requisite to a change of the ownership, so long as the possession remained in the vendor."

The price of the three cows and their calves in the case under consideration seems to have been a round sum.     The

delivery was to take place at Knode's, when the purchase money was to be paid. It can hardly be claimed that, if the sheriff had levied upon the cows and their calves as the property of Zern, the defendant, they could have been sold, so as to pass the legal title thereto to the purchaser, until the purchase money was paid. The title was wholly in Zern when the small payment on account of the purchase was made, or he had no title.

In Hand v. Matthews, 208 Pa. 149, in which the court below had granted a nonsuit, after rejecting the plaintiff's offer of testimony, Mr. Justice POTTER states the whole question, which seems to have some applicability here, as follows: "The question raised by this appeal is, therefore, whether the facts contained in plaintiff's offer of testimony would, if established, have entitled them to possession of the goods replevied. It is contended that the title and right of possession of the goods became vested in the plaintiffs when they paid $500 on account of the purchase money and received a receipt from the auctioneer. The offer does not set forth the terms and conditions of the sale, nor the terms of the receipt. But in the absence of a special provision or understanding to the contrary, a cash sale is generally presumed to have been contemplated: 24 Am. & Eng. Ency. of Law (2d ed.), 1095. 'An absolute payment in cash . . . . is always implied when nothing is said:' Benjamin on Sales, sec. 706. In Welsh v. Bell, 32 Pa. 12, Mr. Justice STRONG said (p. 17): 'No agreement having been made for a credit, it was, of course, a contract for a cash sale, and without actual delivery the property would not pass to the vendee until payment of the consideration.'"

In our own case of Brown v. Reber, 30 Pa. Superior Ct. 114, a horse was sold at auction under the terms upon which the sale was made and possession retained until the conditions were complied with. Delay having occurred, the horse died in the meantime and it was held by us that the title to the property was in the seller and the loss must rest upon him. The facts are somewhat different from those in the present case and the conclusion for that reason not entirely applicable, but our Pennsylvania cases are very carefully collected by our

Brother MORRISON in his opinion in that case, some of which are herein cited, and it seems to us that we keep more safely within the principles laid down, particularly in the cases of Welsh v. Bell, 32 Pa. 12, and Hand v. Matthews, 208 Pa. 149, by holding, as the court below held, that no terms for payment having been provided at the time of the agreement of sale and a delivery and payment being coincident, as testified by the plaintiff, the title did not pass until the delivery at Knode's, when the purchase money was paid, and that, therefore, the plaintiff could legally claim the purchase price only for what he delivered.

We do not overlook the testimony of the plaintiff, in which he said, in reply to the question, "What arrangement, if any, did you make about keeping the cattle?  A. He had not his car load bought yet and he asked me to keep them, until he sent me word and then send them to Knode's.  He told me to take good care of them before he left, the same as if they were my own cattle."  Coupled as this is with the directions as to delivery and the other testimony of the plaintiff as to the delivery and payment, we cannot see that the jury could be allowed to infer that it was the intention of the parties to have the title pass at the time of the original contract.  It would permit an inference by a jury to overturn the well-settled principles established by the courts of England and America governing transactions of this character.

A letter offered in evidence by the plaintiff, written by the defendant to the plaintiff, relating to the delivery and the price, is not printed in the plaintiff's paper-book, but, so far as we are able to judge of its materiality, we do not think the failure to print it affects the case one way or the other.

We can see nothing in the case from which a jury could be allowed to infer the transfer of the title to the property to the purchaser at the time of the sale and are, therefore, of the opinion that the court below, having directed a verdict for the plaintiff at the trial, properly entered judgment non obstante veredicto upon the whole case as presented, as it would have been justified in doing at the trial.

Judgment affirmed.