### Julius S. Holden *v.* Francis Cole and Others.

#### In Error.

Without an order of the Quarter Sessions, supervisors of the highways have no authority either to open a temporary way for the public, in a case of sudden necessity, through private property, or to correct errors in the opening of an old one.

Unless an exception be taken at the trial, the president's charge, filed pursuant to request made on the following day, is not a subject for the assignment of error.

Error to the Common Pleas of Bradford county.

This was an action of trespass quare clausum fregit, which originated before a justice of the peace, and was brought by Julius S. Holden, the plaintiff in error, against Francis Cole, Israel Smith, Daniel Cole, George Coolbaugh, Marvin Thayer, Nelson D. Warford, William Coolbaugh, and William Cowell, the defendants in error, to recover damages for breaking and entering the close of the plaintiff, pulling down his fence, subverting the soil, and opening and constructing a road through the same, &c., without authority of law. The justice gave judgment in favour of the defendants, from which the plaintiffs appealed to the Court of Common Pleas, and declared as above stated.

The plaintiff proved by several witnesses the pulling down of his fence and making of a road upon his land by the defendants in the year 1842.

The defendants then gave in evidence the records of the Court of Quarter Sessions of Bradford county, of December sessions, 1827, and July, 1828; by which it appeared a road had been regularly laid out and confirmed by the court, beginning at a plum tree near the house of Benjamin Achla, and ending at the river bank near the house of Thomas Bull. The courses and distances of which road were stated in the report of the viewers, and entered upon the records.

They then proved that Francis S. Cole, one of the defendants, was one of the supervisors of Nysox township for the year 1842, and that the other defendants acted under his direction in pulling down the plaintiff's fence, and making the road on his land. They also called several of the original viewers of said road, and also other witnesses, who gave evidence tending to show that the plaintiff's fence was in the road as located by the viewers upon the ground, and returned by them to the court; and that the road made by defendants was upon the said original location. They further proved that at the point where the road first came to the river, the bank had slid off to such an extent

as to make it necessary to widen the road, which passed about thirty feet up the river along the plaintiff's land; and that they removed the plaintiff's fence at that point, in order to make a passage for the public, which had become difficult by reason of the sliding down or washing away of the river bank.   But they still alleged that they had not gone beyond the bounds of the laid out road.

The plaintiff, to rebut the evidence of the defendants, called witnesses to prove that his fence was not within the bounds of the road, as originally laid; and that the road as constructed by the defendants through his land, was in some places from fifteen to thirty feet further upon his land than was called for by the draft and report of the viewers as returned to the court.   He also showed that before 1827, there was an old road which had been used for some time upon the site of, or near to which the new road was laid by the viewers.   And that some time in 1828, one of the supervisors of that year came on to the ground to open the road agreeably to the order of the court; and that he opened and constructed the road without materially changing it from the bed of the old road, and that the plaintiff's fence, in 1842, was not in the road so constructed.   He also gave evidence to disprove the necessity of changing the road, in consequence of the washing away of the river bank.

Much evidence was given by both parties upon these points which it is not necessary to state here.   The court (Conyngham President) charged the jury as follows:

" We call your attention to the facts of the case.   There is no dispute about the plaintiff's possession and right to the land, and to some of the defendants tearing down and removing his fence.   As it regards the other defendants, all present assisting, or ready to aid and assist, are equally liable with those actually committing the act.   The jury may find a verdict against all or any of the defendants.

" What are the facts ?   The road was laid out and confirmed by the Court of Quarter Sessions in 1828; and before this suit was brought, the supervisor, Cole, one of the defendants, proceeded to open it. According to the testimony of Mr. Arnot, the old supervisor, he opened the part of the road above the mill; but where the dispute now is, he says he left the old road as it had been opened a year or two before, laid out by the court to the mill: he had no surveyor—he followed no lines or marks in his location, but proceeded as Mr. Ackla told him, in relation to the manner of running by the viewers at the time of the location.   Now, if this was the case; if in fact this *old* road runs not on the ground where the road was subsequently laid out by the viewers and confirmed by the court, we see no difficulty in the

supervisor, Mr. Cole, and those called by him to aid him, proceeding to open it upon the ground where it was so laid; and the mere act of Mr. Arnot apparently recognising the site of the old road in 1828, as he testifies, would not prevent the supervisor afterwards opening the road upon the true ground of the road. It would indeed be his duty to do so; and particularly so, if, in consequence of the washing away of part of the river bank affecting this old road, the travelling or passing public were sustaining delay, inconvenience, and injury, which inconvenience would be remedied either in whole or in part by opening the road on the ground where the viewers had originally located it and returned it to the court.

" The facts are submitted to you. It is not for you to decide where may be the best ground, either now or then, for the location: but where did the viewers actually locate it and return it by their draft to the court for confirmation. The great dispute is about the starting point. When you can ascertain the ground upon which the viewers did lay and return the road, we have already said to you that the supervisor might legally open the road upon such ground for the width of thirty feet, as fixed by the court to be the width of the road; and if the defendants did not exceed these bounds, under the view of the facts alleged by them, here they would not be liable in the action of trespass.

" Another question however arises here. It is contended by the plaintiff, that even if you find the facts with regard to the original location of the road by the viewers, as the defendants contend, still, that the defendants are liable in consequence of an alleged opening of the road on the land of the plaintiff of greater width, either gradually along the whole of the early line, or at the east end of said line, on land actually *without* the limits of the original thirty feet, so as to make up for ground of the original located road which had been washed away by the river. Now we say to you, that if the road, as originally located, had been washed away by the river, it would not give any right to the supervisor to go on and take new land, and appropriate it permanently for a road; for, by so doing, great injury might accrue to the owner of the land, and there is no remedy given in such cases for the ascertainment of his damages under the order of the Court of Quarter Sessions; so that such a proceeding would in fact be taking away the land of a party for the benefit of the public, without compensation, which cannot be done. And if the supervisor, with those aiding him, did proceed thus to enter on the land of the plaintiff, and tear down his fence to locate a permanent road of the original width fixed by the court upon land now washed away by the river, taking new land to make up the deficiency, they would be liable in trespass. In such a case there should be pre-

viously an application to the court to newly locate the road, and viewers would then be appointed to do it.

" We do not mean to say, with reference to any general rights of the public and individuals, that if, by any sudden washing away of a river, a regularly located road should become so dangerous or impassable as to interfere with the travelling of the public, that the public would be without remedy, and their travel be arrested until the sometimes tedious proceedings of the court might give them a new road. We are disposed to think that in such cases the owner of the land would have to submit to temporary inconvenience for the benefit of the public, and that a supervisor, first making known such purpose to the owner, might be authorized to open a necessary quantity of the adjoining land, sufficient to secure to the public a proper mode of safe passing and travelling, until time, under the provisions of the acts of Assembly in such cases made and provided, might be gained to obtain the proper location of a new and necessary part of the road. In such cases, after the establishing and opening of the new road under the order of the court, the owner of the land might obtain his damages, and the viewers would be justified in allowing them under the circumstances of the case. This question, however, of a temporary road or passage hardly arises in the case now before you, as the defendants justify under an alleged location of a permanent road, not with a view to future proceedings, but so to remain.

" The questions of fact, then, for you are, did the supervisor and those with him do no more than open the road upon the land on which it was originally located by the viewers and confirmed by the court? Then, they would not be liable in this action, if they did so, without any unnecessary or wanton injury, looking at the evidence for the time and manner of doing it; if otherwise, the plaintiff would be entitled to recover. 2d. Did they include more land than the original allotted width, to overcome the difficulties arising from the washing of the river, for the purpose of permanently making a new road upon new land? Then they would be liable in this action for the injury sustained by the plaintiff, in thus entering upon and taking from him land which had never been appropriated to the purposes of a road by viewers and the court, and the plaintiff be entitled to such damages as you think he ought to recover."

The cause was tried at February term, 1845, when the jury rendered a verdict for the defendants. On the 7th day of May following, the above charge was filed, with the certificate of the president judge appended:—

" This charge is this day copied from the original charge, and filed

in the suit, as requested by the plaintiff at the last term, in the hope that the counsel for the defendants will permit the matter to be reviewed in the Supreme Court, as the plaintiff complains of injustice therein. I cannot, however, state that the plaintiff excepted to the charge before the rendition of the verdict. The facts in relation to his request to file the charge appear in the statement, subscribed by me, endorsed on the back of his affidavit."

The endorsement here referred to states, that the charge was not excepted to, nor was any request made to file the same, until the next day after the rendition of the verdict.

The plaintiff, thereupon, removed the record to this court, by writ of error.

*Holden*, in propria persona.

*Elwell*, for defendants in error, contended that the cause was not before the court in such manner as that the proceedings upon the trial could be reviewed. The record does not contain the evidence. The charge of the court, it would seem, was perfectly satisfactory to the plaintiff until there was a verdict against him, and one day after. He was too late in his request to the judge to file his charge, and too late in his exception to it. The points raised on the trial in the court below could not regularly be raised here; and, therefore, it would be improper to argue them, and he should refrain from doing so.

PER CURIAM. The result of this writ of error shows the folly of a suitor's attempt to manage his own cause. Had the points ruled below been brought before us on exceptions regularly taken, which any lawyer would have known to be necessary, the judgment must have been reversed; for it is certain that supervisors of the highways have no authority to re-locate a road, in order to place it on what might be supposed its recorded site. The authority, under an order to open, is exhausted by the action of those to whom it is directed, and cannot be resumed. The road, once laid, cannot be altered, except by a new and an original proceeding, according to the road law. Any other doctrine would clothe the supervisors with arbitrary power, and work infinite mischief in the old counties, where the actual site scarcely ever corresponds with the courses and distances of the survey. Neither have supervisors authority, on the ground of sudden necessity, to open a route for the public, whatever may be the rights of individuals, through private property, till a road can be regularly laid out. Without an order of the Quarter Sessions, these officers have no more authority to

open a new road, or correct errors in the opening of an old one, than have their fellow citizens.    The defendants, therefore, undoubtedly committed a trespass in taking down the plaintiff's fence; but as he took no exception to the direction at the trial, and it was too late to do so on the following day, it is not in our power to relieve him.

Judgment affirmed.