# Waldschmidt v. Glenfield Borough, Appellant.

*Road law—Width of road—Width as fixed by use—Width as fixed by viewers.*

Where a public road has been opened and worked on the ground partly within and partly without the lines of the road as returned by the viewers, its breadth will be extended, when necessary, from the middle of the road so worked and used to the limit allowed by law. If it is uncertain whether the road as used was partly within and partly without the lines as returned by the viewers and

the evidence on the subject is conflicting, the matter must be determined by a jury.

Argued April 16, 1915. Appeal, No. 127, April T., 1915, by defendant, from judgment of C. P. Allegheny Co., Nov. T., 1908, No. 603, on verdict for plaintiff in case of Daniel Waldschmidt, et al., v. Glenfield Borough. Before Rice, P. J., Orlady, Head, Henderson, Kephart and Trexler, JJ. Affirmed.

Trespass for the alleged taking and injury of plaintiff's property by reason of the grading, paving and improving of Kilbuck street in the Borough of Glenfield. Before Ford, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $350. Defendant appealed.

*Error assigned,* amongst others, was in refusing to enter judgment for plaintiff n. o. v.

*Frederic W. Miller,* with him *F. H. Phillips,* for appellant, cited: Furniss v. Furniss, 29 Pa. 15; Gray v. North Versailles Twp., 208 Pa. 77.

*Charles A. Waldschmidt,* with him *Hugh S. Craig,* for appellee.—The case was for the jury: Duffey v. York Haven Water & Power Co., 233 Pa. 107; Shannon v. McHenry, 219 Pa. 267; Page v. Moore, 235 Pa. 161; Wetzel v. Pittsburgh Rys. Co., 55 Pa. Superior Ct. 22; Gray v. North Versailles Twp., 208 Pa. 77.

Opinion by Kephart, J., July 21, 1915:

It was decided in Furniss v. Furniss, 29 Pa. 15, that "Where a public road has been opened, and worked on ground different from that marked out and reported by viewers, it will be a safe rule to extend its breadth, when

necessary, from the middle of the road so worked and used, to the limit allowed by law." In order to some extent to relieve the severity of this rule, the legislature, by Act of June 19, 1901, P. L. 573, restricted its operation by providing that where the opened and used portion of a highway was within the lines of the road as originally surveyed "such lines shall be and remain the boundary lines of such road." When the opened and used road lies partly within and partly without the lines of the road as returned by the viewers, the Act of 1901 does not operate and the rule laid down in Furniss v. Furniss, supra, is applicable. The appellees' contention was that the opened and used portion of the road was within the lines of the original survey and within the terms of the Act of 1901. The appellant endeavored to show that it was partly within and partly without the lines of the old survey.

The appellant urges that there was not sufficient evidence of the location of the opened portion of the road as being within the lines of the old survey to submit to the jury. There was evidence from persons resident in the neighborhood, who had known the used road and property in question for a number of years, that there had been in existence fences along both sides of and outside the traveled way, showing a road approximately of the width the road was directed to be opened by the court. The traveled part of the roadway between these fence lines was eighteen to twenty feet in width. These fences and fence posts were in existence since the road was surveyed in 1872. It is further testified that the appellees' father built his fence pursuant to a survey made by the county surveyor many years ago, on the line of the road as it existed before the borough improved the street. This would not have the effect of concluding the matter, and of itself would not be sufficient to establish the location of the viewers' line, but in connection with the other evidence was material. The existence of the center line of the survey of 1872 has

been testified to by a number of surveyors who located this original line.  For the plaintiff Mr. Shaw testified that in 1895 he made this survey and found the original line to be sixteen feet and two inches from the corner of appellee's property.  He starts his survey in the centre line of Centre avenue at the Beaver road, observing the old fence lines and stake lines that were then fairly well defined, and extending thence by the several courses and distances, which, upon comparison, check with the viewers' survey of 1872.  He describes the manner in which the survey was made and points out slight changes or deviations from this line.  It is quite true that the road as originally laid out might have been difficult to build; but the question for the jury was whether the traveled way came within the lines of that survey.  The testimony of Mr. Shaw is positive on that point.  Attention is called to the plan made by Mr. Shaw in 1914, which would have a tendency to contradict his testimony.  He does not regard it as doing so.  He speaks of it as a slight difference.  His survey or location plan of 1914 is made from a survey of the curb lines located with respect to his 1895 survey, for the purpose of comparison.  With this in view he testifies that the line of the new street is, at one corner, four and one-half feet on the defendant's land, widening as you approach the southern part of this land.  His plan of 1914 might indicate that the location of the centre line of the 1872 survey, in the 1895 plan, was error, as the 1914 plan places the appellees' property line twenty-six feet from this center line, which would place the opened and used portion of the road partly within and partly without the survey of 1872.  His testimony and the 1914 plan was to show comparison of the work on the ground, and, with relation to the survey of 1872, to show from the survey of the curb lines of new improvement how such improvement encroached on the plaintiffs' property.  The question would be for the jury as to whether his 1914 plan correctly represented such comparison.  He had testi-

fied how his 1895 plan was made and the jury would have to determine whether this correctly represented the location of the centre line of the 1872 survey, or whether the 1914 plan correctly represented the location of this centre line. As we read his testimony with relation to this later plan, it is not satisfying or convincing to our mind as to the results set forth. The detail in getting it up is not clearly set forth. Whether the 1895 survey is merely plotted in from the work done in 1895, or from an actual survey of the 1872 line made in 1914 when the survey of the present curb line was made, does not appear in the testimony. Unless he had some known place on the ground also indicated on his 1895 plan, at which he could begin his 1914 survey of the curb lines, the comparison would not be accurate by plotting in his 1895 work. The purpose of his testimony was to show the number of feet outside the lines of the old survey occupied by the new improvement, and the distance given was approximately correct as compared with Mr. McKnight's survey. It would have been improper for the trial court to have held this testimony insufficient to submit to the jury, or that his 1895 plan should be discredited. It was for the jury to determine whether the survey of 1895 was correct. His work stood for what he did but checked up, apparently, with the paper survey of 1872 in evidence. His testimony in regard to the centre line of the old survey and the traveled way, being within these lines, is to some extent corroborated by the testimony of the witnesses as to the location and maintenance of fences and the apparent distance between those fences being the width which the court ordered it to be opened. Appellant admitted the distance between these fence lines. In view of all the evidence the court committed no error in refusing to enter judgment n. o. v.

The assignments of error are overruled and the judgment is affirmed at the cost of the appellant.