Bartholomew et al. *v.* Baker, Appellant.

150

Argued November 19, 1940. 

 Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Edward Merchant,* with him *T. C. Gawthrop* and *H. F. Troutman,* for appellant.

*Samuel Lichtenfeld,* for appellees.

OPINION BY PARKER, J.:

This is a proceeding in equity by the supervisors of Easttown Township, Chester County, praying for a mandatory injunction to abate an alleged public nuisance resulting from the placing of a hedge and monuments within the lines of Valley Forge Road, a public highway. After hearing, the court below found for the plaintiffs, enjoined the defendant from maintaining the hedge and monuments, and commanded her to remove them. Defendant has appealed. We are all of the opinion that the court erred in its legal conclusions and that the decree must be reversed.

There was no serious dispute as to the facts. The findings of fact by the chancellor were supported by evidence and no question is raised by the parties as to their correctness. The problems raised are pure questions of law, the principal one being whether the western line of Valley Forge Road, a county line highway, is to be located, under the peculiar circumstances present here, by measuring from the center line of the road as it had been traveled for a number of years or by some other method.

The property of the defendant is bounded on the east by Valley Forge Road, on the north by Exeter Avenue, and on the south by South Devon Avenue. Valley Forge Road was used as early as 1715 and was laid out in 1735 by the Court of Quarter Sessions of Chester County. In 1789 Delaware County was formed from a part of Chester County. In 1870, pursuant to the provisions of the Act of June 13, 1836, P. L. 555, particularly Section XXVI,[1] on a representation by petitioners that the road had "become filled with small crooks and bends" and had become narrowed to an average width of 17 feet, the Courts of Quarter Sessions of Chester and Delaware Counties appointed viewers who made reports to the respective courts laying out the road. These reports were confirmed absolutely. The road was to be 565 perches in length and 33 feet in width, and its center was to be a straight line dividing the two counties on a course south twenty-five degrees east.

The road has never been opened, so far as the evidence discloses, to its full width, but use by the public

---

[1] "Roads upon and along a line which divides two adjoining counties, may be laid out, altered and vacated in the manner provided in the case of other roads, except that the court of quarter sessions of each of the said counties shall appoint three of the viewers, and that a report as aforesaid, shall be made to the said courts respectively, and that the said courts shall otherwise have and exercise concurrent jurisdiction therein."

has established a well defined beaten vehicle track with some bends but substantially on the general course called for in the report of viewers. As is required by law, the supervisors of the two townships affected have divided the work of maintenance and the supervisors of Easttown Township have had charge of the portion of the road on which defendant's property fronts. Recently, when the supervisors undertook to widen and improve the road south of Exeter Avenue, a controversy arose between the supervisors and the defendant as to the correct location of the western line of Valley Forge Road. The defendant employed a surveyor, set up monuments and planted a hedge substantially upon the line as claimed by her.

The lower court found, among others, the important facts that the eastern line of defendant's property, the center line of Valley Forge Road as laid out and ordered to be realigned in 1870, and the division line of the counties of Chester and Delaware are coincident; that at no point along defendant's land was the western edge of the road as traveled more than 16½ feet west from the center line of Valley Forge Road as laid out in 1870 (that is, that the beaten track for its entire length along the defendant's property was wholly within the limits of the road as then laid out); that the hedge and monuments lately placed by the defendant are within 16½ feet of the center line of the beaten track of the road as it had been used for a number of years; and that the western line of the road north of Exeter Avenue and defendant's property is for some distance located from 18 inches to two feet outside and west of the west line of the road as it was laid out by the viewers in 1870. The traveled portion of the road in front of defendant's property is from 12 to 15 feet in width and is for the most part in Chester County. There are other important facts to which we will refer in the course of this opinion.

The court below reached the conclusion, which would

support the decree, that the western line of the road was to be determined by measuring 16½ feet from the center of the beaten track. In arriving at that result, the court relied upon the principles announced in the leading case of *Furniss v. Furniss,* 29 Pa. 15, and followed in many subsequent decisions. It was there held (p. 17) that " 'where a road has been opened by supervisors, its location cannot afterwards be altered by another supervisor, for the purpose of placing it on what he may suppose to be its proper site;' and this is in accordance with practical experience. It is certainly the duty of supervisors, in executing an order for the opening of a road, to follow the report of viewers as nearly as possible. But we all know that in practice it is rarely carried out with fidelity. Marshy ground, an increased elevation, a deep ravine, and many other things, may induce a deviation; yet when once laid, there it must remain. The authority under the order to open is exhausted by the action of those to whom it is directed, and cannot be resumed. It can only be altered by a new proceeding under the road law ...... Where a public road has been opened, and worked on ground different from that marked out and reported by viewers (I speak not of roads through unimproved lands where the original marks are plainly visible), it will be a safe rule to extend its breadth, when necessary, from the middle of the road so worked and used, to the limit allowed by law."

By joint action of the courts of Chester and Delaware Counties, this road was not only realigned and straightened, but was made a *county line* road with all the characteristics incident to a public highway on a county line. Such a road differs in many respects from an ordinary township road and is specifically authorized by the statutory road law. The only appellate court case which we have been able to find that deals with such a road is *Roaring Creek Road,* 11 Pa. 356 (1849).

Roaring Creek marked the dividing line between two counties and the viewers attempted to lay out a road on the banks of the creek, at some places in one county and at other places in another county, crossing and re-crossing the stream. The Supreme Court set aside the proceedings in both counties, saying (p. 360): "The roads contemplated to be laid out, as this road was, under the 26th section before recited, are roads laid out on the division line between the counties, the half of the breadth of the road in each county. The line of the counties is the centre of the road."

There was no direct evidence that when this road was opened it was placed in the precise location where it is now found. Plaintiffs rely solely on the inference that is to be drawn from its present location. The evidence on this subject was not satisfactory, for the bald testimony that the road has been in the same location for forty years is not very definite evidence from which to determine the center line of the beaten track of an unimproved road within two or three feet and, in turn, find the precise location as made by those whose duty it was to realign the road after the court order in 1870. It is a matter of common knowledge that beaten tracks on unimproved roads shift with the weather, with the seasons, and after storms. That portion of the principles announced in the Furniss case dealing with the fixing of boundaries of public roads by reference to the center of the beaten track was a rule of necessity and, in part, a rule of convenience. It is a wise rule if properly applied. It was never intended to supplant direct evidence as to where the road was actually located when opened. If when the road was opened its course was marked either by marking the boundaries or the center line of the road, then the limits of the road would not shift if the center line of travel deviated from time to time: *Com. v. Shoemaker*, 14 Pa. Superior Ct. 194, 206. A public road once laid

out cannot be changed by the supervisors; it can only be changed by a new proceeding under the road law: *Holden v. Cole,* 1 Pa. 303, 307; *McMurtrie v. Stewart,* 21 Pa. 322, 325.

This road was a public highway for more than a century prior to 1870. At that time the courts of the two counties ordered that it should be realigned so as to form a straight line for its entire course and that the county line should mark the center line of the road. There is here no difficulty in fixing the location of the county line and that line therefore determines the location.

The center line of this road is marked by marble monuments giving every evidence of permanence, located at the intersection of this road with Exeter Avenue and with South Devon Avenue, and those monuments correspond with the center line of the road as laid out by the viewers and with the line dividing the two counties. It is true that these are not ancient markers and we do not know when they were set, but the supervisors have allowed them to remain for some time and they have not attempted to explain their existence by any evidence. If the markers were not intended to mark the center of the road, under the circumstances present here, no one should have known the facts better than the supervisors and they had a duty to answer the implication to be drawn from their presence. Mere inference founded on a rule of convenience must give way to such direct evidence. In addition, we are of the opinion that this county line is the equivalent of a monument fixing the center line of this road. This road was laid out as a county line road and it must remain such until changed by proceedings under the road laws of the Commonwealth.

In fixing the boundaries of a public highway, the property rights of abutting owners are always affected. When such an owner is adversely affected by the open-

ing of or changing the location of a road he is entitled to damages. If the boundaries are to correspond always with the center of the traveled highway, the owner would have great difficulty in protecting his rights in case of a deviation in the traveled route, which we have seen is bound to occur on an unimproved road. The disadvantages that had resulted from a strict application of the principles announced in the Furniss case were such that the subject was given consideration by the Legislature. If there be any doubt remaining as to the correctness of the result reached by us, it is removed by the Act of June 19, 1901, P. L. 573 (36 PS §1905), which provides: "In all cases where public roads in this commonwealth have been or may hereafter be laid out by viewers, and the report of such viewers has been or may hereafter be confirmed by the court according to law, the width thereof fixed and ordered to be opened, and the same has been or may hereafter be opened, with the roadbed or track thereof traveled by the public located within the lines of such road as originally laid out, such lines shall be and remain the boundary lines of such road, unless the location of such road has been or may be changed by due course of law."

Even if this road had been an ordinary township road or if its center line had not been marked in any way, this statute would require a reversal of the decree, for the traveled portion of the highway in front of defendant's land was wholly within the boundaries fixed by the court order of 1870. The court below was of the opinion that this act was not applicable because the traveled portion of the road at a point north of Exeter Avenue and plaintiff's property extended, for a short distance, from eighteen inches to two feet beyond the western line of the road as laid out in 1870. The effect of such a construction is to hold that if the traveled portion of a road at any point is outside the boundaries

fixed by the order opening or aligning the road, then the act is not applicable. We might have a road many miles in length and if at one point the traveled portion of the road was found to be even in part outside the lines as fixed by the court order, then one would be compelled to depend upon inference to fix the location of that road for its entire length. We cannot believe that such was the intention of the Legislature.

When we consider the mischief to be remedied and the objects to be attained we cannot give the law such a narrow construction as that placed upon it by the court below. To so interpret the statute would be to defeat its prime purpose. It seems clear to us that it was the intention of the Legislature that when supervisors should undertake to widen the traveled portion of a highway, they be limited to the boundaries fixed by the court order, except at such places on the road as the track traveled by the public was in whole or in part outside the lines of the road as originally laid out. The Legislature did not intend to arbitrarily divide roads affected by that act into two classes, one where the traveled portion of the road was for its entire course within the original lines as ordered, and the other where the traveled portion of the road was at some one or more places without those lines, and make such classification the basis of the application of the relief granted. Inasmuch as instances are rare where county roads do not at some point depart from the court order, the act would afford little relief if given the limited meaning contended for. The intent was to protect the rights of abutting property owners by providing in substance that where the traveled portion of the road is "within the lines of such road as originally laid out," such lines shall remain the boundary lines until changed by due course of law. The adverb "where" refers to a specific location. The traveled road in front of defendant's land at no point extended west of the original line as

ordered in 1870. Therefore the supervisors have no right to extend the road west of the original line at any point in front of defendant's land.

In construing the Act of 1901, the court below relied upon *Walschmidt v. Glenfield Boro.*, 60 Pa. Superior Ct. 538, and *Gray v. North Versailles Twp.*, 208 Pa. 77, 57 A. 190, but we find nothing in those cases contrary to the conclusion reached here. It appears very clearly from the statements of facts in those cases that the place of alleged departure was at the precise location where the line was in controversy.

In determining the rights of the parties to this controversy, we are not concerned with rights acquired by prescription for the public has not occupied or exercised any rights in the land in controversy. A different question may arise where the traveled portion of the road is in part beyond the limits fixed by the order of 1870. Since such questions will involve persons who are not parties to this action, we are not concerned with them here and they will have to be met if they arise.

The decree of the court below is reversed, and it is directed that the bill be dismissed, appellees to pay the costs.

PER CURIAM, January 30, 1941:

The foregoing opinion was prepared by Judge PARKER before his accession to the Supreme Court. It is now adopted and filed as the opinion of the court.