## Highland Township Petition

*Swope, Brown & Swope*, for petitioners.
*Eugene R. Hartman*, contra.

SHEELY, P. J., July 28, 1956.—The Board of Road Supervisors of Highland Township filed a petition praying for the approval by the court of the relocation of a section of the road leading from the Knoxlyn-Orrtanna Road to the McKnightstown-Hereter's Mill Road, and the vacation of the old location thereof. The portion to be vacated extends for a distance of 309 feet from the intersection of the Knoxlyn-Orrtanna Road and will be supplied by a new section of road extending approximately 283 feet from the Knoxlyn-Orrtanna Road, beginning at a point on that road 158.9 feet further west than the portion to be vacated. The

area affected by the alteration is a triangle made by the existing road on the east, the proposed new road on the west and the Knoxlyn-Orrtanna Road on the south. All of the land on both sides of the portion of the road to be vacated is owned by W. E. Minnick who has agreed to the relocation and has offered to supply the land necessary for the new road along the western boundary of his land to a width of 33 feet, and a width of 60 feet at the intersection. He has agreed to pay $200 toward the expense of the relocation and to provide a place to deposit any rocks or trees which might have to be removed.

The reasons assigned for the action are that the present road is about 15 feet from Marsh Creek which comes closer to the road each year and which overflows its banks, at times making the road impassable and difficult to maintain, and the existence of rocks on each side of the road at the intersection, making it difficult to see traffic approaching on the Knoxlyn-Orrtanna Road. The relocated road would be on higher ground farther from the creek and the view at the intersection would not be obstructed.

The statute under which this petition is presented to the court is section 1115 of The Second Class Township Law of May 1, 1933, P. L. 103, as amended by section 17 of the Act of July 10, 1947, P. L. 1481, 53 PS §19093-1115. The statute provides, inter alia, that whenever the supervisors deem it advisable to change, relocate or alter any part of any public road under their supervision, and can agree with the property owners affected, they may take such action without the formality of a view, provided that no such improvement shall be made the cost and expense of which to the township shall exceed $1,000, and that approval of the court of quarter sessions shall first be secured. In order to understand the purpose of this section and the proper function of the court in granting or refusing

approval of the project, it is necessary to consider the provisions of this section against the background of preëxisting road law.

The general road law of the Commonwealth is the General Road Act of June 13, 1836, P. L. 551, 36 PS §1781, et seq. Under that act, as well as under prior acts, the court of quarter sessions was vested with authority to lay out, change, alter or vacate public roads. The township supervisors had no power whatever to alter a public road except by a new and original proceeding, according to the road law: Holden v. Cole, 1 Pa. 303, 307 (1845). The procedure provided by that act was for the presentation of a petition to the court of quarter sessions praying for the laying out, changing, altering or vacating of a public road, and the appointment by the court of viewers from the county board of viewers.

The viewers would view the road proposed to be changed, would hold hearings concerning the same and would then file with the court their findings as to the necessity for the road, etc. If no objections were filed to the report the report would be confirmed and would become the order of the court. Legal questions concerning the report or the action of the viewers were raised by exceptions to the report and the report was approved or disapproved depending upon the determination of those questions. But if either party were dissatisfied with the viewers' findings of fact as to the necessity for the road, etc., the procedure was to ask for a review, whereupon the court would appoint another board of viewers to pass upon the original petition. Provision was also made for rereviews, in the discretion of the court. Where there were conflicting reports by the viewers and reviewers the court could select the report to be approved in the exercise of judicial discretion: Benton Township Road, 41 Pa. Superior Ct. 57 (1909).

More recently the tendency of the legislature has been to place more authority and more power in the hands of township supervisors and to do away with the procedure provided under the Act of 1836. The provisions of section 1115, which we are now considering, first appeared in the Act of May 5, 1911, P. L. 123, which was a supplement to the General Road Act of 1836, and were also contained in section 685 of The General Township Act of July 14, 1917, P. L. 840. The limit of expense under those acts was $300, which was increased to $500 in The Second Class Township Law of 1933, and to $1,000 by the amendment of July 10, 1947, P. L. 1481. All of these acts provided for the improvements to be made "without the formality of a view" when the supervisors deemed it advisable to make the improvements and when the other conditions prescribed by the act existed. These conditions were that all of the property owners affected by the improvement should agree, thereby eliminating any question concerning damages, etc., and that the improvement should not involve expense to the township in excess of the stipulated amount.

The effect and the purpose of the statute was to take out of the jurisdiction of the court the laying out, etc., of roads where the amount involved is small and the property owners affected agree, and to vest in the township supervisors the final determination of the advisability of making the improvement. The supervisors then become, in effect, the viewers provided for by the Act of 1836 and their petition to the court for approval becomes, in effect, the viewers' report: In re: Vacation of Road in Middlecreek Township, 68 D. & C. 559, 567 (1949). The act makes no provision for a review, as does section 1101 of The Second Class Township Law, as amended by the Act of July 10, 1947, P. L. 1481, hereinafter discussed, or for any method of contesting the supervisors' determination of the advisabil-

ity of the improvement, other than the provision for approval by the court. The necessary inference is that the court is to consider only those matters previously raised by exceptions to viewers' reports, i.e., legal questions, leaving the advisability of the improvement solely to the discretion of the supervisors. This is further indicated by the provision of the statute that the improvement be made "without the formality of a view", i.e., without the requirement of the court determining the necessity, etc., of the improvement as is required in the case of a view.

The jurisdiction of the courts over township roads was further curtailed, and the authority of the supervisors enlarged, by the Act of July 10, 1947, P. L. 1481, amending section 1101 of The Second Class Township Law. That amendment repealed the section of the township law which provided that all roads should be laid out, widened, changed or vacated by the court of quarter sessions in the manner provided by the General Road Act, and substituted a section authorizing the township supervisors to do these acts by ordinance. The new section provides for the filing of the ordinance in the office of the clerk of the courts and for the filing of exceptions thereto and for the filing of a petition with the court for a review. Under this act the ordinance of the township supervisors is considered as a report of viewers: Likar Appeal, 157 Pa. Superior Ct. 572, 576 (1945). This section applies to all road improvements regardless of the cost thereof to the township and regardless of whether all the owners of property affected thereby agree to the improvement. It is significant that provision is here made for exceptions and also for a review, which provision is entirely absent from section 1115, so that parties dissatisfied with the ordinance, and the findings of the supervisors therein, could have a review of the facts by the court.

Section 1115 has been considered in only one appellate court case (Bethlehem Water Authority Case, 144 Pa. Superior Ct. 57 (1941)), and the decision of the court there is in accord with the view here taken. In that case the township supervisors proceeded under section 1115 to relocate a road on land of the water authority for the purpose of enabling the authority to construct a reservoir, the water of which would cover the section of the old road proposed to be vacated. Exceptions to the petition for approval were filed by two owners of property which did not abut on the portion of the road proposed to be vacated, but who used the road as a means of access to their property and who would be required to travel farther by the relocation to reach their property. They contended that they were "property owners affected" by the relocation whose consent thereto was necessary.

The court held that since their property did not abut on the highway to be vacated, they had no greater interest in the matter than the general public and that they were, therefore, not "property owners affected" and had no standing to file exceptions to the supervisors' petition. The necessary holding of this case is that if the property owners affected by the relocation, i.e., those who abut the road to be vacated, agree to the improvement, and the expense to the township does not exceed $1,000, no objection to the improvement can be made by other taxpayers. In other words, the determination by the supervisors as to the desirability of the improvement is not subject to question before the court, at least, in the absence of fraud or misconduct on their part, the only question before the court being whether the conditions prescribed by the statute exist. The only property owner whose property abuts on the road here proposed to be vacated is W. E. Minnick, and since he has agreed to the vacation of the old road, the other parties appearing in opposition

to the relocation have no standing to except to the supervisors' petition.

An examination of the objections to the road made by the contestants indicates that the main objection is that the money required for the relocation could be better used on other roads of the township, particularly those roads which are used by school buses. One of the contestants appeared on behalf of the school board and testified that the supervisors in the past had failed to improve certain school bus roads and had contended that they had exhausted their money. The school board had no standing to object since it was not a property owner affected. It obviously is not within the province of the court to dictate to township supervisors when and how they should expend the township moneys. They are elected public officials charged by law with certain responsibilities, among which are the care and maintenance of roads, and their official acts cannot lightly be set aside. It was never the intention of the legislature that the court should exercise supervision of the supervisors or that the courts should substitute their judgment for that of the supervisors, any more than it was its intention that the court should supervise actions of the school boards legally taken. If the proposed project is within the terms of the statute, the supervisors have the final authority to determine the advisability of adopting the project.

The members of the school board are justifiably interested in seeking to have roads traversed by school buses maintained in the best possible condition, but they cannot attain this objective by objecting to the expenditure by the supervisors of money on other roads. If the supervisors fail to maintain school bus roads, or other roads, in a proper condition, the parties aggrieved have their remedy by appropriate action.

Another objection was that the improvement was not necessary as the present road is in a satisfactory

condition, or in a better condition than some other roads of the township. Admittedly, however, the road is flooded at times and the view of approaching traffic at the intersection is obstructed by rocks on either side of the road, so that there is some basis for the determination by the supervisors that it is desirable to relocate the road and, as shown above, this is within their power.

The proposed relocated road is to be 33 feet wide with a spread to 60 feet at the intersection, while the old road is open to only 22 feet. A question was raised as to the necessity for a road of this width. Section 5 of the General Road Act of June 13, 1836, P. L. 551, as amended, 36 PS §1901, requires that the width of a public road shall be not less than 33 feet and this requirement must be met in the new section regardless of the established width of the old road.

Another objection was that the relocation was an unnecessary expense to the taxpayers and that the road would cost more than $1,000. As indicated, the necessity was for the supervisors to determine if the cost and expense to the township would not exceed $1,000. One witness estimated the cost at $2,000, another said that $1,000 would not improve conditions and the supervisors estimated the cost at less than $1,000, based partly on an estimate from Leonard Shealer that the road could be cleared with a bulldozer in 15 hours at a cost of $7 per hour. While we have nothing except the estimates of the witnesses, the question of cost becomes relatively unimportant in this case since Mr. Minnick has agreed to contribute $200 toward the cost of the improvement and the county has agreed to pay $818 from liquid fuel funds therefor. Therefore, if the supervisors are correct in their estimate, the cost to the township would be nothing, and if Mr. Woods' estimate of $2,000 is correct, the cost to the township would still be less than $1,000.

It is the cost to the township and not the cost of the improvement which governs: Bethlehem Water Authority Case, 144 Pa. Superior Ct. 57 (1941).

It appearing that the cost to the township would be less than $1,000 and that all property owners affected have agreed, the petition of the supervisors for approval of the relocation of the road must be granted.

And now, July 28, 1956, the petition of the Board of Road Supervisors of Highland Township, Adams County, for approval of the relocation of the road referred to in the petition, and the vacation of the old location thereof, is approved.